**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMPLOYERS-TEAMSTERS LOCAL NOS.
175 & 505 PENSION TRUST FUND,
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 132
PENSION PLAN, and WEST VIRGINIA
LABORERS' PENSION TRUST FUND,
   *Pension-Fund Plaintiffs-*
       *Appellants,*

    v.

ANCHOR CAPITAL ADVISORS,
   *Lead Plaintiff-Appellee,*

    and

WATSON PHARMACEUTICALS, INC.,
ALLEN CHAO, JOSEPH C. PAPA, FRED
WILKINSEN, and MICHAEL E. BOXER,
   *Defendants-Appellees.*

No. 04-56791

D.C. Nos.
CV-03-08236-AHM
CV-03-08946-AHM
CV-03-09291-AHM
CV-03-09628-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
November 17, 2006—Pasadena, California

Filed August 16, 2007

Before: Thomas G. Nelson and Jay S. Bybee, Circuit Judges,
and Kevin Thomas Duffy,* District Judge.

*The Honorable Kevin Thomas Duffy, Senior Judge, United States
District Court for the Southern District of New York, sitting by designa-
tion.

9973

Opinion by Judge Duffy

**COUNSEL**

Joseph D. Daley, Esq., William S. Lerach, Esq., Darren J. Robbins, Esq., Eric Alan Isaacson, Esq., Daniel S. Drosman, Esq., Lerach Coughlin Stoia Geller Rudman & Robbins LLP, for appellant Pension Fund.

Christopher Kim, Esq., Lisa J. Yang, Esq., Lim Ruger and Kim, for lead plaintiff-appellee Anchor Capital Advisors.

Sean M. Handler, Esq., Stuart L. Berman, Esq., Robin Winchester, Esq., Schiffrin & Barroway, LLP, for lead plaintiff-appellee Anchor Capital Advisors.

Seth Aronson, Esq., Robert C. Vanderet, Esq., David I. Hurwitz, Esq., J. Cacilia Kim, Esq., O'Melveny & Myers LLP, for defendants-appellees Watson Pharmaceuticals, Inc., Allen Chao, Joseph C. Papa, Fred Wilkinson, and Michael E. Boxer.

---

**OPINION**

DUFFY, District Judge:

Appellants, non-parties to the action below, bring this appeal from the district court's order granting lead plaintiff's motion to dismiss its claims in an uncertified securities class action. Because Appellants never filed a complaint or formally moved to intervene, they lack standing and we are therefore precluded from reaching the merits of Appellants' argument that they would have been the proper lead plaintiff pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(a). Furthermore, lead plaintiff's voluntary dismissal of its claims prior to class certification renders this appeal of the interim lead plaintiff order moot. Appellants' argument that they could not file their own complaint due to the proscription against "piggybacking" on an original class action is also without merit. The appeal is dismissed.

I.  *Facts*

On November 12, 2003, Anchor Capital Advisors ("Anchor Capital") filed the first of four purported class actions in the Central District of California against Watson Pharmaceuticals, Inc. ("Watson Pharmaceuticals") for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of

1934. Appellants did not file a complaint or move to intervene in any of the four district court actions. On February 9, 2004, the district court consolidated the four actions and considered the motions of various parties, including Appellants', for appointment of lead plaintiff pursuant to the PSLRA. The district court preliminarily declared Anchor Capital as the lead plaintiff based upon its loss of $3.2 million on behalf of its investors, holding that it had sufficient authority to sue on behalf of its clients and that it was the party with the largest financial stake in the outcome of the litigation.[1]

Watson Pharmaceuticals moved to dismiss the complaint for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b) and the PSLRA. On August 2, 2004, the district court dismissed the complaint for failure to adequately plead falsity and scienter. The order allowed Anchor Capital the opportunity to re-plead, however, held that it would be "unlikely that Plaintiffs will be able to amend to allege additional facts that will satisfy the heightened pleading requirements." *See* Order Granting Motion to Dismiss the Consolidated Complaint, August 2, 2004, at 27. In light of this ruling, Anchor Capital informed the district court that it would not file another amended complaint, instead requesting that the individual uncertified actions be dismissed with prejudice. Appellants did not object to the dismissal or take any

---

[1]Appellants argue that an investment advisor such as Anchor Capital cannot be the appropriate lead plaintiff because it did not have express written authority to sue on its clients' behalf, a requirement articulated by some—but not all—of the district courts that have weighed in on this issue. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002). On the other hand, as the district court found here, other courts have found that an investment advisor has an interest in its own right to receive full and fair disclosures regarding the true value of a company's stock, and therefore is a "purchaser" under the PSLRA with proper standing to pursue litigation on behalf of its individual clients. *See, e.g., Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 491, 501 (S.D. Tex. 2004); *In re Rent-Way Litig.*, 218 F.R.D. 101, 109 (W.D. Pa. 2003).

other action at that time. Accordingly, on September 2, 2004, the district court dismissed the action with prejudice. On appeal, Appellants now challenge the lead plaintiff ruling.

II.   *Discussion*

a.   *Standing*

[1] Standing is the threshold issue of any federal action, a matter of jurisdiction because "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In this case, because the class was never certified, Appellants were not parties to the district court action and lack standing to bring this appeal. Appellants were merely potential class members in a potential class action suit. Despite ample opportunity to do so, Appellants never filed a complaint, moved to intervene, objected to the requested dismissal, or filed an amended complaint after Anchor Capital notified the district court that it would voluntarily dismiss its action. As articulated in *Marino v. Ortiz* "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988).

Notwithstanding this principle, the main thrust of Appellant's argument is premised on *Z-Seven Fund*, which holds that a class member must await final judgment before it is permitted to appeal from a lead-plaintiff ruling. *See Z-Seven Fund v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-19 (9th Cir. 2000). Appellants attempt to stretch the holding of *Z-Seven* to imply that even putative members of a non-certified class have standing to appeal a lead-plaintiff ruling after judgment of dismissal has been entered. In light of *Marino*, this cannot be the case.

[2] The denial of Appellants' lead-plaintiff motion did not leave them without a remedy. Most intuitive among their host

of options was to file a motion for intervention. Appellants incorrectly argue that a motion for intervention would have served no purpose after their lead-plaintiff motion was denied. The standards governing motions for intervention and for lead plaintiff status, however, could not be more different. At the relevant time, permissive intervention merely required that:

> [u]pon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*See* F.R.C.P. 24(b), amended by 2007 U.S. Order 07-30 (applying non-substantive changes to the requirements for permissive intervention). On the other hand, a motion for lead plaintiff status carries with it a more onerous burden: indeed, the substance of this appeal is premised on the ability to prove which prospective lead plaintiff is the most adequate by virtue of having the highest financial stake in the outcome of the case.

**[3]** Appellants argue that their motion for lead plaintiff status was tantamount to a motion for intervention. This is simply not so. The plain language of the PSLRA states that:

> Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class

that the court determines to be most capable of adequately representing the interests of class members
. . . .

*See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The plain language of this statute is testament to the fact that a motion to be appointed as lead plaintiff is not the same as a formal motion to intervene. Appellants cite three cases in an unsuccessful attempt to bolster their argument. *See Griffin v. Paine Webber Inc.*, 84 F. Supp. 2d 508, 514 (S.D.N.Y. 2000); *In re Lucent Techs. Inc. Sec. Litig.*, 194 F.R.D. 137, 146 (D.N.J. 2000); *Ravens v. Iftikar*, 174 F.R.D. 651, 659 (N.D. Cal. 1997). These cases describe the purposes and procedures of obtaining lead plaintiff status pursuant to the PSLRA; however, none of these cases stand for the proposition that simply making this motion dispenses with the necessity of formally intervening.[2]

**[4]** In the alternative, Appellants cite *Devlin v. Scardelletti* to argue that a non-named class member who fails to properly intervene may nevertheless bring an appeal after a settlement

---

[2]Appellants do not argue or explain why they believe these cases stand for their position, instead choosing to rely on a single statement in *Ravens* to support their argument: "the central purpose [of the lead-plaintiff notice requirement] is to enable the member of the putative class with the 'largest financial interest in the relief sought by the class' to make a rational decision whether to intervene." *See Ravens*, 174 F.R.D. at 659. To be sure, the notice requirement of the PSLRA is designed to ensure that the most adequate plaintiff emerges to the position of representing the class. For this goal to be achieved, it is necessary that all interested parties are informed of their host of options, which include making a motion for lead plaintiff status, opting out, and making a motion for intervention, among other things. We do not think the language to which Appellants point, standing alone, is enough to equate a motion for lead-plaintiff status under the PSLRA with a formal motion for intervention. Indeed, in *Ravens* the court went on to say that, "[u]nder Congress' regime, qualified investors must decide whether to intervene *or* compete for lead plaintiff appointment and to negotiate attorney arrangements so that the class representative that emerges is the 'most capable of adequately representing the interests of the class.' " *Id.* at 676 (emphasis added).

agreement has been entered. *See Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002). This case is easily distinguishable. In *Devlin* the class had been certified, and therefore the non-named plaintiffs had standing to appeal, much like in *Z-Seven*. In this case, on the other hand, the appellants were not members of a certified class and therefore lack standing to appeal any judgment in the case below.

b. *Mootness*

**[5]** Appellee's voluntary dismissal of their claims before the putative class was certified renders the appeal of the interim lead plaintiff order moot. "[A] suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of all named plaintiffs are satisfied and no class has been properly certified." *See Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1045 (5th Cir. 1981). In these situations there is no longer a 'case or controversy' to be decided within the meaning of Article III of the Constitution.

c. *The Filing of an Additional Claim Would Not Have Been Impermissible "Piggybacking"*

**[6]** In *American Pipe*, the Court held that the commencement of an original class suit tolls the running of the statute of limitations for all purported members of the class until class certification is denied. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). At that point, "class members may choose to file their own action or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983). In this case, when the litigation clock again began to run the Appellants were afforded a one-day opportunity to file their own complaint. This time constraint was, of course, due to the original action having been filed only one day before the statute of limitations expired. This fact was known to the parties and their supposedly sophisticated counsel, and they should have made

arrangements to be able to file their own action in a limited time period if necessity required.

**[7]** There is case law suggesting that Appellants would have been precluded from filing another *class action*. *See Robbin v. Fluor Corp.*, 835 F.2d 213, 213 (9th Cir. 1987). It is also possible, however, that this rule only applies when the appropriateness of the class action has been previously rejected. *See Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) ("the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action *following a definitive determination of the inappropriateness of class certification.*")(emphasis added). Here the appropriateness of a class action was never examined; instead the case was voluntarily dismissed before the class was certified. Regardless of whether Appellants would have been permitted to file another class action, however, one thing remains clear: the "piggybacking" prohibition would have in no way precluded them from filing their own *individual* action.

The argument that there was no time to file a new complaint is also without merit. Appellants had ample opportunity to file a motion for intervention throughout the pendency of the original class action. Had they successfully intervened, Appellants would have been parties and would have had standing to appeal the lead-plaintiff order. Furthermore, Appellants had a one-day window to file their own complaint after the action was dismissed. While Appellants were admittedly confined to a limited time frame, they are a sophisticated party who was on notice of the situation and should have been prepared to file a complaint when and if the action was dismissed.

It is also worth noting that there is no evidence to suggest that Appellants would have filed their own complaint initially. While the PSLRA may have been drafted to avoid "hurried, ill-researched complaints," *see* Plaintiffs-Appellants' Response to Order to Show Cause at 9, this statute certainly

was *not* intended to allow parties to benefit from tolling when they would not have filed a complaint in the first place. This statute was also certainly not intended to excuse sophisticated parties from being diligent and keeping abreast of developments in the case, especially when the class is not certified.

III.   *Conclusion*

Appellants lack standing to bring this appeal. The appeal is DISMISSED.