FILED

NOT FOR PUBLICATION

NOV 10 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-14-1578-KuDTa |
| ) | |
| ALLANA BARONI, ) | Bk. No.   12-10986 |
| ) | |
| Debtor. ) | Adv. No.   13-01069 |
| _____ ) | |
| ALLANA BARONI, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on September 24, 2015
at Malibu, California

Filed – November 10, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Alan M. Ahart, Bankruptcy Judge, Presiding

_____

Appearances:    Louis J. Esbin argued for appellant Allana Baroni;
Bernard Kornberg of Severson & Werson argued for
appellee Nationstar Mortgage, LLC.

_____

Before: KURTZ, DUNN and TAYLOR, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

The debtor Allana Baroni[1] commenced an adversary proceeding against Nationstar Mortgage LLC challenging Nationstar's proof of secured claim, and the bankruptcy court granted summary judgment in favor of Nationstar. The bankruptcy court determined that there was no genuine factual dispute that Nationstar possessed the original promissory note indorsed in blank, so Nationstar qualified as a person entitled to enforce the note and hence had standing to file the proof of claim. Allana asserts that Nationstar demonstrated neither that it had a right to enforce the note and the deed of trust nor that it had an agency relationship with someone else who did.

Our resolution of this appeal largely hinges on our answer to a single question: when a creditor, in the process of supporting a proof of claim based on a promissory note, presents the bankruptcy court with two materially different copies of the indorsements supposedly accompanying the note, can the court on summary judgment correctly determine that there is no genuine dispute that the note has been duly indorsed in blank? We answer this question in the negative. While the bankruptcy court's summary judgment against Allana on one of Allana's four claims for relief can be affirmed on alternate grounds, summary judgment on the other three claims for relief must be reversed.

Accordingly, we AFFIRM IN PART, REVERSE IN PART AND REMAND FOR FURTHER PROCEEDINGS.

---

[1]For the sake of clarity, we refer to Allana and her husband James Baroni by their first names. No disrespect is intended.

2

**FACTS**

In February 2004, Allana's husband James refinanced a parcel of residential real property located in Carmel, California. According to several of Allana's filings in her bankruptcy case, the Baronis did not actually reside in the Carmel property but instead used it as a rental property. In furtherance of the refinancing, James executed a note in the amount of $1,430,000.00 and a deed of trust securing repayment of the note.

At the time of the refinancing, James owned the Carmel property as his sole and separate property. But shortly after the refinancing, James executed a grant deed conveying the Carmel property to himself and Allana as husband and wife as joint tenants. Allana does not dispute that she took her interest in the Carmel property subject to the deed of trust and in that sense has admitted that she might be obliged to repay the Carmel note in order to prevent foreclosure of her real property interest. On the other hand, Allana claims that she is not certain **who** she is obliged to pay. She also claims that the Carmel note and the Carmel deed of trust have been irrevocably split, which has rendered the deed of trust unenforceable.

In February 2012, Allana commenced her bankruptcy case by filing a voluntary chapter 13[2] petition. Later that same month, she voluntarily converted her case from chapter 13 to chapter 11.

---

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Evidence Rule" references are to the Federal Rules of Evidence.

3

In September 2012, Nationstar filed a proof of claim asserting a claim in Allana's bankruptcy case in the approximate amount of $1,480,000.00. Nationstar attached to the proof of claim copies of a promissory note and a deed of trust both apparently executed by James in February 2004 (respectively, the "POC Note Copy" and the "POC Trust Deed Copy"). The POC Note Copy identifies James as the borrower and Platinum Capital Group as the lender. The principal amount stated in the POC Note Copy is $1,430,000.00.

The POC Note Copy also contains on the signature page what appears to be James' signature. The page immediately following the signature page is blank, with the exception of what appear to be three indorsements.[3] Reading from left to right, the first indorsement appears to be signed by an "assistant secretary" of Platinum Capital Group and appears to make the note payable to "Lehman Brothers Bank FSB." Immediately to the right of the first indorsement is another indorsement apparently signed by an "authorized signatory" of Lehman Brothers Holdings, Inc. The "pay to the order" line of that indorsement is blank. Immediately beneath the Lehman Brothers Holdings, Inc. indorsement is a third indorsement apparently signed by a "Vice President" of Lehman Brothers Bank, FSB and apparently making the note payable to Lehman Brothers Holdings, Inc.[4]

---

[3]A copy of this indorsements page is attached as Appendix A to this decision.

[4]Of course, reading these undated indorsements in this order makes no sense except for the purpose of describing their relative positions on the indorsements page. The three indorsements only can be understood sensibly in the following

(continued...)

4

The POC Trust Deed Copy identifies James as the borrower, Platinum Capital Group as the lender, and MERS as the beneficiary, but solely as the nominee of the lender and the lender's successors and assigns. The recording information on the first page of the POC Trust Deed Copy indicates that the trust deed was recorded in the Monterey County Recorder's Office in March 2004. The POC Trust Deed Copy further reflects the transfer of an interest in the Carmel property to secure the repayment of the Carmel note.

In April 2013, over Nationstar's objection, Allana obtained an order confirming her second amended reorganization plan. In relevant part, Allana set forth in her disclosure statement and plan that she disputed and objected to Nationstar's proof of claim but that, to the extent the bankruptcy court ultimately allowed any claim secured by the Carmel property, she would pay the holder of that allowed claim in accordance with the terms of her plan.

That same month, Allana filed her complaint against Nationstar. In the complaint, Allana pointed out that neither the Carmel note nor the Carmel deed of trust identify Nationstar in any way. Therefore, Allana posited, nothing in Nationstar's proof of claim established that Nationstar was entitled to enforce either the Carmel note or the Carmel deed of trust.

[4](...continued) order: (1) the indorsement by Platinum Capital Group (the original payee identified in the note) making the note payable to Lehman Brothers Bank; (2) the indorsement by Lehman Brothers Bank making the note payable to Lehman Brothers Holdings, Inc.; and (3) the indorsement in blank by Lehman Brothers Holdings, Inc. making the note payable to the bearer.

5

Allana also included in her complaint copies of a number of communications she received from third parties. These communications opine (without actually proving) that the Carmel note was sold to a mortgage securitization trust and that the trust owns the note. The complaint then proceeds to conflate the concept of note ownership with the concept of being a "holder" of the note. The complaint asserts that Nationstar only could prove its standing to file the proof of claim if it demonstrated its title to the Carmel note within the "chain of ownership." According to the complaint, Allana would be unjustifiably exposed to the risk of having to pay the amount due on the Carmel note multiple times unless the bankruptcy court determined who was the "holder" of the Carmel note and hence had standing to file a proof of claim based on the Carmel note.

In addition, Allana's complaint pointed out that there was no documentation indicating that Nationstar is the beneficiary under the deed of trust or an assignee of the beneficiary.

Based on the allegations set forth above, Allana's complaint included a claim for declaratory relief seeking a judicial determination as to whether Nationstar's proof of claim should be allowed or disallowed and whether that claim was secured or unsecured. The complaint also included a claim for relief alleging that Nationstar would be unjustly enriched if its claim were allowed in the absence of proof that Nationstar was entitled to enforce the Carmel note and deed of trust. The complaint's third claim for relief under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., alleged that Nationstar falsely represented that it was entitled to enforce the Carmel

6

note and deed of trust by filing the proof of claim.[5] Allana's fourth and final claim for relief, based on all of the same allegations, set forth a claim under California's unfair competition law, Cal. Bus. & Profs. Code § 17200, et seq.

Nationstar sought dismissal of Allana's complaint under Civil Rule 12(b)(6), but the bankruptcy court denied Nationstar's dismissal motion. Nationstar then filed an answer to Allana's complaint in November 2013, and close to a year later, in September 2014, Nationstar filed its summary judgment motion. Even though Nationstar did not so indicate in its proof of claim, Nationstar identified itself in the summary judgment motion as the servicing agent for the owner of the note, Wells Fargo Bank, as trustee of the securitization trust referenced in Allana's complaint.

In order to prove up Wells Fargo's interest in the Carmel note, Nationstar submitted the declaration of Edward Hyne. Hyne identified himself as a "Litigation Resolution Analyst" employed by Nationstar. By virtue of his employment, Hyne claimed familiarity with the manner in which Nationstar's business records are prepared and maintained. Hyne further claimed that Nationstar's records are "prepared" by Nationstar employees and agents with personal knowledge of the facts set forth therein or with information supplied by others with personal knowledge.

---

[5]The FDCPA claim also alleged that Nationstar has misrepresented the amount due on the note and has falsely failed to credit Allana for all of the payments she has made. Allana has abandoned these issues for appeal purposes by not addressing them in her opening appeal brief. Christian Legal Soc'y v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

In a bit of a disconnect, Hyne stated that the facts set forth in his declaration were based on "the files and records for [Allana's] loan," but he does not identify those loan files and records as Nationstar's business records. Nor would it seem accurate to characterize them as Nationstar's business records. There is no reason to suspect let alone conclude that anyone at Nationstar "prepared" any of the documents pertaining to the origination or sale of the Carmel loan. In fact, nothing in the summary judgment record suggests that Nationstar played any role in the origination or sale of that loan, so it makes no sense that Nationstar would have prepared any documents pertaining to the origination or sale of the loan.

Based on the above description of the source of his knowledge, Hyne asserted that the note attached as Exhibit A to his declaration was a true copy of the Carmel note and that Exhibit C to his declaration – a mortgage loan sale & assignment agreement between Lehman Brothers Holdings, Inc. as seller and Structured Asset Securities Corp. as buyer – evidences the transfer of the Carmel note to Wells Fargo as Trustee for the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2004-5.

Unfortunately, Hyne did not specify **what** was purportedly transferred to Wells Fargo: possession of the note, beneficial ownership of the note, mere legal title to the note, or the right to payment under the note. Moreover, the sale and assignment agreement attached as Exhibit C does not evidence or even reference any such transfers to Wells Fargo.

Meanwhile, attached to Exhibit C is a single page on which

8

everything is redacted, except for the following single line of information: "17362807  3 Carmel  CA  93923 1430000 1430000."[6] Hyne and Nationstar presumably claim that this redacted page attached to Exhibit C evidences the inclusion of the Carmel note in the mortgage pool covered by the sale and assignment agreement.  Immediately preceding the redacted page are two schedules that are supposed to identify the loans covered by the sale and assignment agreement, but both of those schedules are blank, except for a type-written notation on the face of each schedule indicating that the actual listing of covered loans is "on file" in the Philadelphia offices of Morgan, Lewis & Bockius LLP.  There is no explanation in the sale and assignment agreement of the relationship between the blank schedules and the redacted page immediately following the blank schedules.  Nor did Hyne attempt to explain the relationship.  More importantly, no one who arguably might have had personal knowledge of what actually is in the completed schedules supposedly held by Morgan, Lewis & Bockius attempted to explain the significance of the redacted page.

Finally, Hyne stated that Nationstar is Wells Fargo's servicing agent for purposes of the Carmel note.  In support of this statement, Hyne referenced the limited power of attorney attached to his declaration as Exhibit D.  The power of attorney,

---

[6]The significance of the number "17362807" is equivocal.  It is not the loan number assigned to the Carmel refinancing loan at the time the loan was made.  That loan number apparently is 11101490.  The summary judgment record reflects that "17362807" was handwritten onto some copies of the Carmel note but not onto others.  Who wrote that number on some copies and what that number purportedly signifies never was addressed by either party.

apparently executed by Wells Fargo as the trustee of certain designated securitization trusts, identified Nationstar as the assignee of Aurora Loan Services LLC's loan servicing rights and duties and granted Nationstar the authority to, among other things, execute on Wells Fargo's behalf "all documents and instruments necessary in appearance and prosecution of bankruptcy proceedings . . . ." The limited power of attorney listed the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2004-5, as one of the securitization trusts covered. But nothing in the limited power of attorney established that ownership of the Carmel note had been transferred to that particular securitization trust, any more than the sale and assignment agreement had.

Nationstar further supported its summary judgment motion by filing the declaration of one of its attorneys, Adam Barasch. In relevant part, Barasch stated that, on behalf of his client Nationstar, he was in possession of the original note and original deed of trust executed by James. Barasch further stated that the copy of the Carmel note attached as Exhibit A to the Hyne declaration is a true copy of the original note in his possession.

In October 2014, Allana filed her opposition to Nationstar's summary judgment motion. Allana principally argued that a genuine issue of material fact existed as to whether there were two different original Carmel notes memorializing the same obligation. Allana pointed out that the copy of the Carmel note attached to the Hyne declaration differs in several respects from the POC Note Copy. Most importantly, the indorsements page in

10

each copy is significantly different.  As described above, in the POC Note Copy, the Platinum Capital Group indorsement and the Lehman Brothers Holdings indorsement are side by side and the Lehman Brothers Bank indorsement is beneath the Lehman Brothers Holdings indorsement.  In the Hyne declaration copy of the Carmel note, the Lehman Brothers Bank indorsement and the Lehman Brothers Holdings indorsement are side by side and the Platinum Capital Group indorsement is above the Lehman Brothers Bank indorsement.[7]

In support of her opposition, Allana submitted a declaration of a questioned-documents expert by the name of Meredith DeKalb Miller.  Miller explained in her declaration that she examined in 2011 several different copies of the Carmel note and deed of trust that Allana had provided to her as well as an original note and an original deed of trust, which she examined in person in June 2011 in the Chicago offices of McGinnis Tessitore Wutcher LLP.  Miller observed that some of the note copies she examined had marks indicative of hole punches and fasteners while others did not.  Miller further observed that some of the note copies she examined had the hand-printed notation "kahrl" and "17362807" in the upper right hand corner while others did not.  Meanwhile, one of the four note copies included a stamped notation stating that the copy was certified to be a true and correct copy.

Notwithstanding these and other differences, Miller also stated that all of the copies provided to her were

---

[7]A copy of the indorsements page accompanying the Hyne declaration is attached as Appendix B to this decision.

11

"representative copies of the same adjustable rate note" and that the signatures of James' she observed on the original note and on all of the note copies "are consistent." Miller Decl. at ¶¶ 20, 26.

In her summary judgment opposition, Allana claimed that a 2011 report attached to Miller's declaration as Exhibit 2 (on which Miller's 2014 declaration was based) demonstrated that the POC Note Copy and the Hyne declaration note copy are not copies of the same original note.[8] However, neither the 2011 Miller report nor the 2014 Miller declaration demonstrate what Allana claims they do. At most, Miller's declaration and report observe certain minor differences between various copies of the note provided to her long before either Nationstar's 2012 proof of claim or Hyne's 2014 declaration even existed.[9]

In addition to her claim that there appeared to exist two different original Carmel notes, Allana asserted that the Hyne declaration and the Barasch declaration did not contain competent evidence regarding who owned the Carmel note and who was the holder of the Carmel note. In conjunction with this assertion, Allana formally made several different evidentiary objections to both declarations, which the bankruptcy court never addressed.

[8]The summary judgment opposition stated at page 9: "As described in the Forensic Examiner's report attached as "Exhibit 2," the Note Mr. Barasch apparently has in his possession, and attached as Exhibit A to Mr. Hyne's declaration is not the same Note attached to Claim 9-1 . . . ."

[9]The indorsement pages included with the note copies provided to Miller are a different matter. Miller duly noted that the indorsement signatures on some copies were "configured differently" than other copies.

12

Allana further contended that she was not given adequate opportunity to conduct discovery. In support of this contention, Allana referenced certain examinations and document requests she had sought under Rule 2004 from Nationstar, Wells Fargo and others before she filed her adversary proceeding against Nationstar. According to Allana, none of the responding parties fully complied with her Rule 2004 examination and document requests. Allana did not identify what efforts, if any, she had made to conduct or compel discovery during the roughly 18 months that elapsed between the filing of her complaint and the filing of her summary judgment opposition.

After holding a hearing at which both parties submitted without argument, the bankruptcy court entered an order granting summary judgment to Nationstar. The order set forth the court's reasoning. According to the court, Allana lacked standing to challenge Nationstar's proof of claim because only James executed the Carmel note and deed of trust.

Alternately, the bankruptcy court explained, Nationstar had established that it had possession of the original Carmel note, indorsed in blank, so Nationstar was a "person entitled to enforce" the Carmel note under Uniform Commercial Code § 3-301 and hence had standing to file a proof of claim based on the Carmel note. Even if Nationstar had not qualified as the holder of the note, the court reasoned, Nationstar had established that it possessed the note on behalf of Wells Fargo as trustee of a securitization trust and that Wells Fargo owned the Carmel note as trustee of that trust. Thus the court held that, as Wells Fargo's servicing agent, Nationstar had alternately established

13

that it was "a nonholder in possession of the instrument who has the rights of a holder" under Uniform Commercial Code § 3-301.

Based on its analysis of Nationstar's and Wells Fargo's rights in relation to the Carmel note, the bankruptcy court concluded that, as a matter of law, Allana could not prevail on any of her claims for relief. As an additional ground for denying relief on Allana's unjust enrichment claim, the bankruptcy court held that Allana's action was an action based on contract and that unjust enrichment was not available in an action based on contract. As additional grounds for denying relief on Allana's Fair Debt Collection Practices Act claim, the bankruptcy court held that Nationstar was not a debt collector within the meaning of the Act, that the Act only applied to consumer debts and that the debt secured by the Carmel property was not consumer debt.

On December 15, 2014, Allana timely filed her notice of appeal from the bankruptcy court's summary judgment.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (C). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court correctly grant summary judgment in favor of Nationstar?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's summary judgment ruling. Wank v. Gordon (In re Wank), 505 B.R. 878, 886 (9th Cir. BAP 2014).

14

## SUMMARY JUDGMENT STANDARDS

Because we review summary judgment rulings de novo, we utilize the same summary judgment standards as other federal courts use. Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). Pursuant to Civil Rule 56(a), which is made applicable in adversary proceedings by Rule 7056, summary judgment may be appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In re Wank, 505 B.R. at 886. In considering summary judgment, the court is not permitted to weigh the evidence; instead, it only may determine whether a genuine and material factual issue remains for trial. Id. An issue is genuine if there is enough evidence for a reasonable trier of fact to make a finding in favor of the non-moving party, and an issue is material if it might affect the outcome of the case. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

The initial summary judgment burden rests on the moving party. In re Wank, 505 B.R. at 886. Once the moving party has presented facts as undisputed and has presented admissible evidence in support of those facts, the non-moving party may be deemed to have admitted those facts for summary judgment purposes unless he or she specifically challenges those facts and presents controverting evidence in support of his or her position. See Beard v. Banks, 548 U.S. 521, 527 (2006); see also 10A Charles A. Wright, Arthur R. Miller, et al., FED. PRAC. & PROC. CIV. § 2727 (3d ed. 2015) ("If the movant presents credible evidence that, if

15

not controverted at trial, would entitle him to a Rule 50 judgment as a matter of law that evidence must be accepted as true on a summary-judgment motion.").

**DISCUSSION**

**A.  Allana's Standing**

We first address the bankruptcy court's ruling that Allana lacked standing to pursue her adversary proceeding against Nationstar.  Standing typically is jurisdictional. Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors, 498 F.3d 920, 923 (9th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  It is a threshold requirement that must be satisfied in every federal case.  Warth v. Seldin, 422 U.S. 490, 498 (1975).

The three core components necessary for constitutional standing are: (1) injury in fact, (2) causation, and (3) redressability.  See Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273-74 (2008).  Even if the the core constitutional components are present, the plaintiff also may need to address certain prudential standing concerns.  Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906-07 (9th Cir. BAP 2011).  These prudential standing concerns are "'judicially self-imposed limits on the exercise of jurisdiction.'"  Id. (quoting Sprint Commc'ns Co., 554 U.S. at 289).  One of the more common prudential standing concerns is known as third party standing.  Sprint Commc'ns Co., 554 U.S. at 289-90.  This means that "a plaintiff must assert its own legal rights and may not assert the legal rights of others."  In re Veal, 450 B.R. at 907.  In the context of both constitutional and

16

prudential standing issues, the plaintiff bears the burden of proof to establish its standing as to each claim for relief asserted. Id. at 907 n.11.

We disagree with the bankruptcy court's ruling that Allana lacked standing. Allana's adversary proceeding was filed in response to the proof of claim Nationstar filed in her bankruptcy case, pursuant to which Nationstar sought to perfect its right (or Wells Fargo's right) to share in any distributions made by Allana to her creditors in accordance with her proposed reorganization plan. The potential impact of Nationstar's proof of claim on her plan distributions amply satisfies the core constitutional standing components of injury in fact, causation and redressability. Cf. In re Veal, 450 B.R. at 906 (holding that creditor had satisfied constitutional standing requirements in light of the effect of bankruptcy claim allowance procedures on the creditor's ability to obtain a distribution on its claim).

Nor do we perceive the third party standing doctrine as an impediment to Allana's entitlement to sue Nationstar. While the bankruptcy court indicated that Nationstar's proof of claim was based on a debt for which only James was personally liable, the debt was secured by property of Allana's bankruptcy estate, and in light of the clear impact of Nationstar's proof of claim on both Allana's property and on her chapter 11 plan, we hold that she was asserting and protecting her own rights and interests and not those belonging to James.

Allana's position is no different than that of any debtor whose property is encumbered by a non-recourse debt. While she might not be personally liable for repayment of the Carmel note,

17

her interest in the Carmel property is directly and adversely affected pecuniarily by Nationstar's claim. Nationstar has not cited any authority to us indicating that a person whose interest in real property is encumbered by a non-recourse debt lacks standing to challenge both the validity of the lien and the validity of the underlying debt. Nor are we aware of any such authority. To the contrary, as indicated by one of our prior decisions, a debtor whose property is subject to a lien securing non-recourse debt may object to a claim filed in his or her bankruptcy case based on that debt. See Simpson v. Deutsche Bank Nat. Trust Co. (In re Simpson), 2013 WL 2350967 (9th Cir. BAP May 29, 2013) (Mem. Dec.).

Furthermore, the fact that Allana's standing arose after James incurred the debt – when James conveyed an interest in the Carmel property to Allana subject to the Carmel deed of trust – does not alter or impair her standing to challenge the lien and the underlying debt. As noted in Sprint Commc'ns Co., 554 U.S. at 290, a party with standing may confer standing on a third party by transferring a property interest to that third party.

Accordingly, the bankruptcy court's standing ruling does not support the court's summary judgment in favor of Nationstar.

**B.    Nationstar's Standing**

Having concluded that Allana had standing to challenge Nationstar's proof of claim and to assert the claims for relief set forth in her complaint, we next turn our attention to Nationstar's standing to file its proof of claim, an issue on which resolution of this appeal largely turns.

Allana sometimes refers to this as a problem of standing and

18

sometimes as a problem of who qualifies as the real party in interest under Civil Rule 17(a). In In re Veal, this Panel explained that who has standing and who is the real party in interest are legally distinct issues. See In re Veal, 450 B.R. at 907-08. At the same time, in the context of a proof of claim based on a promissory note, we effectively held in In re Veal that the distinction between the two issues is irrelevant because a claimant who is a person entitled to enforce the note satisfies both the standing and real party in interest requirements, and a claimant who is not a person entitled to enforce the note satisfies neither requirement. Id. at 920.

**1. Applicable Law**

Similar standing and real party in interest issues have been addressed in a number of published and unpublished Panel decisions over the last several years. See, e.g., Allen v. U.S. Bank, N.A. (In re Allen), 472 B.R. 559, 565 (9th Cir. BAP 2012); In re Veal, 450 B.R. at 897; see also Rivera v. Deutsche Bank Nat'l Trust Co. (In re Rivera), 2014 WL 6675693, at *6-7 (9th Cir. BAP Nov. 24, 2014) (Mem. Dec.); Green v. Waterfall Victoria Master Fund 2008-1 Grantor Trust Series A (In re Green), 2012 WL 4857552, at *6-7 (9th Cir. BAP Oct. 15, 2012) (Mem. Dec.); cf. Edwards v. Wells Fargo Bank, N.A. (In re Edwards), 454 B.R. 100, 105 (9th Cir. BAP 2011) (focusing on creditor standing issue in the context of a relief from stay motion). In In re Allen and in In re Veal, we generally held that a party is entitled to file a proof of claim based on a secured promissory note if that party is a "person entitled to enforce" the note under § 3-301 of the

19

Uniform Commercial Code ("UCC").[10] In re Allen, 472 B.R. at 565; In re Veal, 450 B.R. at 902. There are several ways a party may become a person entitled to enforce the note under UCC § 3-301, but one common way is for the person to become a "holder" of the note, as defined in UCC § 1-201(b)(21)(A). In re Allen, 472 B.R. at 565; In re Veal, 450 B.R. at 910-11. As set forth in UCC § 1-201(b)(21)(A), a "holder" includes a "person in possession of a negotiable instrument that is payable . . . to bearer . . . ." And a negotiable instrument is payable to the bearer when it is indorsed in blank. See UCC § 3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); see also In re Allen, 472 B.R. at 567.[11]

---

[10]Because the Carmel note and deed of trust apparently were signed in California, the real property securing the note is located in California and Allana at all relevant times has resided in California, California's version of the UCC applies for purposes of determining the parties' rights and duties with respect to the note. See UCC § 1-301(b); Barclays Discount Bank Ltd. v. Levy, 743 F.2d 722, 725 (9th Cir. 1984); see also In re Veal, 450 B.R. at 921 n.41 (applying Arizona's counterpart to UCC § 1-301(b) under similar circumstances). For purposes of resolving this appeal, there is no material difference between the uniform version of the UCC and California's version of the UCC. Meanwhile, the deed of trust identifies federal law and the law of the jurisdiction in which the Carmel property is located as the governing law. Thus, California law also governs interpretation and enforcement of the deed of trust. Id. Moreover, the parties' papers assume that California law applies.

[11]The reasoning of the bankruptcy court and the arguments of both parties have at all times assumed that the Carmel note
(continued...)

20

### 2. Nationstar's Alleged Possession of the Original Note Indorsed in blank

Nationstar claims to have possession of the Carmel note indorsed in blank and thereby claims to be a holder of the note and hence a person entitled to enforce the note. Allana claims that Nationstar's possession of the Carmel note indorsed in blank would be insufficient by itself to support the assertion that Nationstar is entitled to enforce the note. According to Allana, Nationstar also must establish who owns the note and whether Nationstar is the owner's agent. Allana is incorrect. As the plain language of UCC § 3-301 provides, "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

As we explained at length in In re Veal, so long as Allana knows that, if she pays Nationstar she has satisfied the debt, Allana should be indifferent as to who ultimately is determined to be the owner of the note and whether Nationstar is the owner's agent. In re Veal, 450 B.R. at 910, 912 & n.27; see also id. at 913, 919 (holding that alleged servicer can establish entitlement to payment and to file proof of claim by showing that it is a person entitled to enforce the note **or** that it is the agent of a person entitled to enforce the note). Put another way, if

[11](...continued)
qualifies as a negotiable instrument within the meaning of UCC § 3-104(a). Consequently, any issue regarding whether UCC Article 3 applies to the Carmel note has been forfeited. See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002).

21

Nationstar has established it is a person entitled to enforce the note, then Nationstar has provided Allana with the requisite assurance that her plan payments on account of Nationstar's claim will satisfy the debt, in accordance with UCC § 3-602. See In re Veal, 450 B.R. at 910.

Allana argues that there is a triable issue of fact regarding whether there exist two originals of the Carmel note. We disagree. We have reviewed all of the note copies in the summary judgment record as well as the declaration and expert report of Meredith DeKalb Miller and none of these items support the notion that two original notes exist. Rather, the summary judgment record indicates that there is only one original Carmel note and that Nationstar's attorney Adam Barasch is in possession of it. Having studied all of the note copies, we agree with Miller's statement that all of the note copies are representative copies of the same note and that James' signature on each of the note copies is consistent.

Allana attacked Adam Barasch's declaration on a number of evidentiary grounds including hearsay, lack of foundation and lack of personal knowledge, but these grounds are meritless to the extent Allana seeks to challenge Barasch's assertion that he is in possession of the original of the Carmel note. Barasch is competent to employ his powers of personal observation to assess whether he is in possession of an original document. See Evidence Rule 602 and accompanying Advisory Committee Notes. Barasch also is competent to compare the original in his possession to the copy attached to the Hyne declaration and to declare whether the Hyne declaration note copy is identical to

22

the original. Id. Barasch cannot attest to the authenticity of James's signature on the Carmel note, but he does not need to. Signatures on negotiable instruments are presumed to be authentic and authorized, and Allana has not presented any evidence to overcome that presumption. See In re Stanley, 514 B.R. 27, 39 (Bankr. D. Nev. 2012)(citing UCC §§ 1-206 & 3-308).

On the other hand, the authenticity of the indorsements is a different matter. Like James' signature on the note, indorsement signatures on a negotiable instrument typically are self-authenticating. Id. And yet, here, there are genuine and material issues regarding whether the original of the Carmel note was duly indorsed in blank.

Barasch indicated in his declaration that the indorsement page attached to the Hyne declaration note copy is identical to the original. However, Barasch did not specify whether the indorsements appear on the back of the note's signature page or whether they appear on a separate piece of paper attached to the note, which would make the page containing the indorsements an allonge. See In re Veal, 450 B.R. at 911 & n.24. Either way, when as here the debtor legitimately contests the validity of the indorsements, the bankruptcy court is obliged to physically inspect them. Id.

Here, Nationstar itself created a genuine issue of material fact by presenting with its proof of claim a copy of the note containing a materially different indorsements page than that contained in the Hyne declaration note copy. As we explained above, the indorsements are configured differently in the POC note copy and in the Hyne declaration note copy. In spite of the

23

statement in the Barasch declaration that the Hyne declaration note copy is identical to the original, the contents of the indorsements page in the POC note copy is controverting evidence that could permit a reasonable trier of fact to discredit Barasch's statement regarding what the original Carmel note looks like (at least regarding what the indorsements page accompanying the original note looks like). More importantly, a reasonable trier of fact also might infer from the divergent indorsements pages that the original Carmel note never was properly indorsed; rather, an indorsements page might have been placed with the original note by some unknown third party without authority to indorse the Carmel note.

As a result, there is a genuine issue of material fact regarding whether the Carmel note was duly endorsed in blank and made payable to the bearer and hence there also is a genuine issue of material fact as to whether Nationstar qualifies as a holder of the note and a person entitled to enforce the note.

**3. Wells Fargo as Non-holder in Possession of Note with the Rights of a Holder; Evidentiary Problems**

Alternately, Nationstar claims that it possesses the Carmel note on Wells Fargo's behalf and that Wells Fargo therefore qualifies as nonholder in possession of the note with the rights of holder, which is another means of qualifying as a person entitled to enforce the note under UCC § 3-301. See In re Veal, 450 B.R. at 911. This alternate claim depends upon Nationstar's dual contentions that Wells Fargo, as trustee of a securitization trust, owns the Carmel note and that Nationstar is Wells Fargo's agent. As indicated in In re Veal, proving a non-holder claim of

24

this type is harder than proving holder status because the claimant must demonstrate not only possession of the original note but also the transfer of some form of interest in the note – either to the party in possession of the note or to a party on whose behalf the possessor has taken possession of the note. Id. at 911-12.

To support these contentions, Nationstar largely relies on the Hyne declaration. But Hyne's critical declaration testimony lacks adequate foundation as to his personal knowledge of key factual matters, and many of his statements appear to be based on inadmissible hearsay contained in documents attached as exhibits.

Generally speaking, in order to establish the admissibility of his declaration testimony, Hyne needed to satisfy the foundational requirement of demonstrating his personal knowledge of the facts set forth in his declaration. Evidence Rule 602; see also United States v. Lopez, 762 F.3d 852, 863 (9th Cir. 2014) ("Personal knowledge means knowledge produced by the direct involvement of the senses."). To the extent Hyne did not properly lay a foundation regarding his personal knowledge or based his testimony on inadmissible hearsay statements contained in documents attached to his declaration as exhibits, his testimony is inadmissible. See Medina v. Multaler, Inc., 547 F.Supp.2d 1099, 1105 n.8 (C.D. Cal. 2007); see also United States v. Snodgrass, 635 F.3d 324, 329 (7th Cir. 2011) (affirming exclusion of witness testimony that was based on inadmissible hearsay).

From an evidentiary standpoint, of most concern to us is Hyne's statement indicating that ownership of the Carmel note was

25

transferred to Wells Fargo as trustee of a securitization trust in April 2004. There is no specific explanation as to how Hyne came by this information. His generic statement that he relied on Nationstar's books and records in preparing his declaration does virtually nothing to assure us of his personal knowledge regarding ownership of the Carmel note. Nor is there any reliable indication that anyone else at Nationstar had personal knowledge regarding the sale of the Carmel note to Wells Fargo or that anyone at Nationstar prepared business records regarding the sale based on information received from persons known to have personal knowledge.

To corroborate his statement regarding Wells Fargo's ownership of the Carmel note, Hyne apparently relied on the document attached to his declaration as Exhibit C: the mortgage loan sale & assignment agreement between Lehman Brothers Holdings, Inc. as seller and Structured Asset Securities Corp. as buyer. But the statements in Exhibit C that Hyne seems to be relying upon to corroborate his declaration testimony qualify as inadmissable hearsay. For instance, in a passing reference, the sale and assignment agreement refers to Wells Fargo as trustee of certain mortgage note securitization trusts. While Hyne attempted to establish that the contents of the sale and assignment agreement were excepted from the rule against hearsay by the business records exception set forth in Evidence Rule 803(6), Hyne failed to demonstrate that he qualified as the custodian of the sale and assignment agreement or as "another qualified witness" competent to testify regarding the prerequisites for application of the business records exception.

26

See Evidence Rule 803(6)(D).

If Allana had not objected to this particular portion of Hyne's declaration testimony on foundation, lack of personal knowledge, hearsay and similar grounds, we might have concluded that Allana had forfeited these evidentiary objections. But Allana did make the requisite evidentiary objections, and the bankruptcy court ignored these objections. Under the circumstances presented here, the bankruptcy court committed reversible error in doing so.

Even if Nationstar somehow could overcome Allana's evidentiary objections, the sale and assignment agreement's passing reference to Wells Fargo's role as trustee of certain securitization trusts does not contain admissible evidence that would permit the bankruptcy court to conclude for summary judgment purposes that the Carmel note was included in any of the securitization trusts for which Wells Fargo allegedly serves as trustee.

As for Nationstar's contention that it is Wells Fargo's servicing agent, Hyne's statement to that effect appears at first blush to be corroborated by the limited power of attorney attached as Exhibit D to Hyne's declaration. Nonetheless, even if we were to assume that Allana's evidentiary objections to this statement are not well taken, the limited power of attorney does not demonstrate that it covers the Carmel note. Nowhere in the limited power of attorney is the Carmel note listed. The limited power of attorney does list the securitization trust that Nationstar asserts included the Carmel note: the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2004-5.

27

But there is a critical gap in Nationstar's evidence. Nowhere in the Hyne declaration or in the exhibits attached thereto is there any competent evidence demonstrating that ownership of the Carmel note was transferred to the above-referenced securitization trust. In the absence of such evidence, Nationstar did not establish, for summary judgment purposes or otherwise, that Wells Fargo owned the Carmel note and that Nationstar was Wells Fargo's agent for purposes of servicing the Carmel note.

In short, Nationstar did not meet its summary judgment burden to establish that it qualified as a person entitled to enforce the Carmel note under either of its alternate theories pursuant to UCC § 3-301. This means that the bankruptcy court erred when it granted Nationstar summary judgment with respect to Allana's declaratory relief claim and her California unfair competition law claim, which rulings wholly relied on Nationstar's status as a person entitled to enforce the note.

**C.   Alternate Theories in Support of Summary Judgment**

The bankruptcy court offered an alternate theory for its summary judgment ruling with respect to Allana's unjust enrichment claim. According to the court, Allana's complaint against Nationstar sounded in contract, and unjust enrichment does not apply to actions based in contract. See Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1388 (2012).

We are perplexed by the bankruptcy court's unjust enrichment ruling. We are not aware of any contract between Nationstar and Allana. At most, the summary judgment record reflects that Allana obtained an interest in the Carmel property subject to the

28

lien securing repayment of the Carmel note. We simply don't perceive any contractual relationship between Allana and Nationstar, nor do we perceive any contract-based claim in Allana's complaint against Nationstar.

Some California courts have held that unjust enrichment is a remedy and is not an independent cause of action. See, e.g., Jogani v. Superior Court, 165 Cal.App.4th 901, 911 (2008); Melchior v. New Line Prods., Inc., 106 Cal.App.4th 779, 794 (2003). Even so, the Ninth Circuit Court of Appeals recently interpreted California law on this point and held that, when faced with a claim for relief alleging unjust enrichment, district courts ordinarily should treat the claim for relief "as a quasi-contract claim seeking restitution." Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015). Astiana further held that courts should not dismiss such claims as duplicative or superfluous of other claims. Id.

As for Allana's fourth and final claim – her Fair Debt Collection Practices Act ("FDCPA") claim – the bankruptcy court also offered an alternate theory for its summary judgment ruling on that claim. The bankruptcy court held that, as matter of law, the FDCPA did not apply because Nationstar was not a "debt collector" within the meaning of the FDCPA. The Act provides a specialized and narrow definition of the term "debt collector," which states in relevant part as follows:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include–

29

                    *    *    *

           (F) any person collecting or attempting to collect
           any debt owed or due or asserted to be owed or due
           another to the extent such activity (i) is
           incidental to a bona fide fiduciary obligation or
           a bona fide escrow arrangement; (ii) concerns a
           debt which was originated by such person;
           (iii) concerns a debt which was not in default at
           the time it was obtained by such person; or
           (iv) concerns a debt obtained by such person as a
           secured party in a commercial credit transaction
           involving the creditor.

15 U.S.C.A. § 1692a (West).

    The bankruptcy court did not explain its reasoning for this holding, but it seems to be based on the notion that mortgage servicers generally are not considered debt collectors under the FDCPA, so long as their role as mortgage servicer arose before the borrower defaulted. Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985); see also Lal v. Am. Home Servicing, Inc., 680 F.Supp.2d 1218, 1224 (E.D. Cal. 2010) (quoting Perry and stating: "[t]he law is well settled that FDCPA's definition of debt collector 'does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt.'"); Mansour v. Cal-Western Reconveyance Corp., 618 F.Supp.2d 1178, 1182 (D. Ariz. 2009) (same).

    Assuming without deciding that Perry, Lal and Mansour have correctly interpreted the FDCPA, we still cannot affirm the bankruptcy court's ruling on the FDCPA claim on this basis. There are a number of disputed material factual issues that prevent us from doing so, including but not limited to the following: (1) whether the Carmel loan is in default; (2) if so, when that default occurred; (3) whether Nationstar is the mortgage servicer for the Carmel note; and (4) if so, when it

30

became the servicer for that note. The parties contested all of these issues in the adversary proceeding, and the bankruptcy court incorrectly attempted to decide them on summary judgment.

As a second alternate theory for granting summary judgment against Allana on her FDCPA claim, the bankruptcy court held that the Carmel refinancing loan was not a "debt" covered by the FDCPA. We agree. Under the FDCPA, a "debt" is defined as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction **are primarily for personal, family, or household purposes**. . . .

15 U.S.C. § 1692a(5) (emphasis added); see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 874-75 (7th Cir. 2000); Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1068 (9th Cir. 1992).

Here, the summary judgment record establishes that the Carmel loan was used to refinance the Carmel property, and in her bankruptcy filings, Allana repeatedly admitted that the Carmel property was not used as the Baronis' residence, but rather was used as a rental property to generate income.[12] Under these circumstances, we hold that the bankruptcy court correctly determined that the Carmel refinancing loan was not a debt covered by the FDCPA. Cf. Miller, 214 F.3d at 874-75 (indicating that a loan used to refinance property that at the time of the

---

[12]The loan documentation for the Carmel refinancing loan further supports the notion that the Carmel property was not used as the Baronis' residence at the time James entered into the transaction. The Carmel deed of trust included an assignment of rents rider that, among other things, relieved James from the obligation of occupying the Carmel property as his residence.

31

transaction is used as a rental property to generate income is not covered by the FDCPA). Thus, on this basis, the bankruptcy court correctly granted Nationstar summary judgment on Allana's FDCPA claim.[13]

**D.    Other Arguments and Issues**

We also must address Allana's argument that the Carmel note and the Carmel deed of trust have been irrevocably split and, therefore, that the Carmel deed of trust is invalid, so the claim based on the Carmel note should be treated as unsecured. This argument fails because, under California law, the right to enforce the deed of trust automatically follows the note. See Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security."); Cockerell v. Title Ins. & Trust Co., 42 Cal.2d 284, 291 (1954) ("Assuming for the moment that the assignment of the note, secured by the third trust deed, was a valid assignment, no further assignment of the deed of trust was necessary."); see also Carpenter v. Longan, 83 U.S. 271, 275 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.").

Allana additionally argued that the bankruptcy court erred by not giving her more time to conduct discovery before ruling on Nationstar's summary judgment motion. In support of this

[13]Allana did not attempt to address this issue regarding the application of the FDCPA until she filed her reply brief on appeal. Her failure to address this issue in her opening appeal brief provides a separate and independent basis for rejecting her belated contention that the Carmel refinance loan is covered by the FDCPA. Christian Legal Soc'y, 626 F.3d at 487–88; Brownfield, 612 F.3d at 1149 n.4.

32

argument, Allana contends that Nationstar, Wells Fargo and others never fully complied with the discovery requests she made pursuant to Rule 2004 before she filed her adversary proceeding. Allana further contends that Nationstar violated Civil Rule 26 by not disclosing its alleged servicer role and Wells Fargo's alleged ownership of the Carmel note.

In light of our disposition of this appeal, we decline to resolve Allana's discovery-related issues. However, we do note that there is no evidence in the summary judgment record that Allana took any affirmative action to conduct or compel discovery during the entire time her adversary proceeding was pending. Nor did she comply with the applicable procedures for requesting additional time to conduct discovery. See Civil Rule 56(d); see also Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986).

**CONCLUSION**

For the reasons set forth above, we AFFIRM IN PART, REVERSE IN PART AND REMAND FOR FURTHER PROCEEDINGS.

# Appendix A

PAY TO THE ORDER OF

LEHMAN BROTHERS BANK FSB
WITHOUT RECOURSE
PLATINUM CAPITAL GROUP
A CALIFORNIA CORPORATION

BY
ASST SECRETARY

*Carleton Pytron*

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS, INC.

RALPH A. ORAZI III
AUTHORIZED SIGNATORY

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS, INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB

BY
RICK W. SKOGG
VICE PRESIDENT

# Appendix B

PAY TO THE ORDER OF

LEHMAN BROTHERS BANK FSB
WITHOUT RECOURSE
PLATINUM CAPITAL GROUP
A CALIFORNIA CORPORATION

BY
ASST. SECRETARY

Carleton Pytron

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS, INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB

BY:
RICK W. SKOGG
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS, INC.

BY
RALPH A. LANZI III
AUTHORIZED SIGNATORY

**Exhibit A**