**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LINDA CABELLO GARCIA, on behalf of herself and others similarly situated, | No. 23-35267 |
| | D.C. No. 3:22-cv-05984-BJR |
| *Plaintiff-Appellant*, | |
| v. | OPINION |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; KRISTI NOEM, Secretary of Homeland Security; ANGELICA ALFONSO-ROYALS, Acting Director, U.S. Citizenship and Immigration Services, | |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, District Judge, Presiding

Argued and Submitted June 10, 2025
San Francisco, California

Filed July 22, 2025

Before:  Kenneth K. Lee and Daniel A. Bress, Circuit
Judges, and Yvette Kane,[*] District Judge.

Opinion by Judge Bress;
Concurrence by Judge Bress

---

## SUMMARY[**]

---

### Immigration

The panel affirmed the district court's dismissal, for lack of jurisdiction, of Linda Cabello Garcia's complaint alleging that the United States Citizenship and Immigration Services (USCIS) wrongfully denied her application for adjustment of status.

Cabello, the holder of a temporary U visa, sought to adjust her status of lawful permanent resident under 8 U.S.C. § 1255(m), which allows for the discretionary adjustment of status of U visa holders.  USCIS denied adjustment on the ground that Cabello failed to submit the required medical form.

The panel held that 8 U.S.C. § 1252(a)(2)(B)(i) strips a district court of jurisdiction to review the discretionary denial of adjustment of status under 8 U.S.C. § 1255(m) because § 1252(a)(2)(B)(i) directs that such challenges may

---

[*] The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

only be raised through the petition for review process that begins with proceedings before an immigration judge, not a district court.

The panel rejected Cabello's contention that her claim could be brought in district court because her challenge to USCIS's requirement that U-visa holders submit medical forms was a "collateral challenge" to a USCIS policy, a type of claim that *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995 (9th Cir. 2024) treated as allowable, notwithstanding § 1252(a)(2)(B)(i). Under *Nakka*, a collateral claim is one that challenges generally applicable agency policies without referring to or relying on denials of individual applications for relief. But once a plaintiff has applied for adjustment and the agency has denied it—as was the case with both the relevant plaintiff in *Nakka* and Cabello—the plaintiff ceases to have the collateral claim *Nakka* envisioned.

Cabello also argued that if § 1252(a)(2)(B)(i) forecloses district court jurisdiction in this case—as the panel held it does—it is unconstitutional as applied to U visa adjustment of status applicants because by statute and regulation, they cannot obtain review of the USCIS's denial of § 1255(m) relief in removal proceedings before an IJ. According to Cabello, it violates Article III and principles of procedural due process to deny her judicial review of her assertedly pure legal challenges to USCIS's medical examination requirements.

However, in these circumstances, the panel saw no reason why Cabello has a constitutional entitlement to raise her claim to judicial review in district court as opposed to through the IJ and petition for review process. The panel observed that this could delay Cabello's ability to challenge

USCIS's denial, and it might require her to violate the law through her continued presence in order to be placed in removal proceedings. But these were the same problems that the plaintiff faced in *Nakka*, and the court concluded there that Congress can require review in this manner by expressly limiting and channeling judicial review. In the absence of any greater need for immediate judicial review as compared to *Nakka*, that same observation applies here.

Concurring, Judge Bress, joined by Judge Lee, observed that the majority opinion should have been able to resolve the case with minimal analysis, but was required to say much more because of *Nakka*. Judge Bress suggested that, when the moment presents itself, this court should overrule *Nakka*'s determination that § 1252(a)(2)(B)(i) preserves collateral challenges to agency policies relating to the denial of discretionary immigration relief.

---

## COUNSEL

Matt Adams (argued), Glenda M. Aldana Madrid, Leila Kang, and Aaron Korthuis, Northwest Immigrant Rights Project, Seattle, Washington; Jason Baumetz, Alaska Immigration Justice Project, Anchorage, Alaska; for Plaintiff-Appellant.

Hans H. Chen (argued) and  J. Max Weintraub, Senior Litigation Counsel; Anthony D. Bianco, Assistant Director; Kathleen A. Connolly, Chief, Enforcement Unit; William C. Peachey, Director; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United State Department of Justice, Washington, D.C.; Michelle Lambert, Assistant United

States Attorney, Office of the United States Attorney, United States Department of Justice, Seattle, Washington; for Defendants-Appellees.

Mary A. Kenney and Kristin Macleod-Ball, National Immigration Litigation Alliance, Brookline, Massachusetts, for Amici Curiae ASISTA Immigration Assistance and the National Immigration Litigation Alliance.

**OPINION**

BRESS, Circuit Judge:

We address whether 8 U.S.C. § 1252(a)(2)(B)(i) strips district courts of jurisdiction over challenges to the denial of adjustment of status under 8 U.S.C. § 1255(m), which allows for the discretionary adjustment of status of U visa holders. We hold that district courts lack jurisdiction to review the discretionary denial of adjustment of status under § 1255(m). Section 1252(a)(2)(B)(i) directs that these challenges may only be raised through the petition for review process, which begins with proceedings before an immigration judge, not a district court. We affirm the district court's dismissal of the plaintiff's complaint.

I

Aliens are eligible for temporary visas, known as U visas, if they assist law enforcement in the investigation of criminal activity in which the alien was a victim. *See* 8 U.S.C. § 1101(a)(15)(U); Victims of Trafficking and Violence Protection Act of 2000 (VTVPA), Pub. L. No. 106-386, § 1513(a), 114 Stat. 1464, 1533–34; *Coria v. Garland*, 114 F.4th 994, 998 (9th Cir. 2024). To obtain a U visa, an

applicant must be the victim of qualifying criminal activity and receive a certification from an appropriate law enforcement official attesting to the applicant's helpfulness in investigating or prosecuting the crime. *See* 8 U.S.C. §§ 1101(a)(15)(U)(i), 1184(p)(1); *Medina Tovar v. Zuchowski*, 982 F.3d 631, 633–34 (9th Cir. 2020) (en banc).

A person who obtains a U visa may seek to adjust to permanent resident status after a period of three years of continuous physical presence in the United States. 8 U.S.C. § 1255(m)(1)(A); *Perez Perez v. Wolf*, 943 F.3d 853, 858 (9th Cir. 2019). Under § 1255(m), "[t]he Secretary of Homeland Security may adjust the status of an alien admitted into the United States" under a U visa. 8 U.S.C. § 1255(m)(1). The Secretary cannot allow this adjustment of status if she determines that the applicant engaged in certain acts of genocide or torture, or if the applicant unreasonably refused to provide assistance in a criminal investigation. *Id.* To grant adjustment of status under § 1255(m), the Secretary must also determine that the applicant's continued presence in the United States is "justified on humanitarian grounds, to ensure family unity, or is otherwise in the public interest." *Id.* § 1255(m)(1)(B). The Secretary's determination whether to grant adjustment of status under § 1255 is "purely discretionary." *Ayanian v. Garland*, 64 F.4th 1074, 1082 (9th Cir. 2023) (quoting *Kim v. Meese*, 810 F.2d 1494, 1497 (9th Cir. 1987)); *see also, e.g.*, *Kucana v. Holder*, 558 U.S. 233, 246 (2010); *J.M.O. v. United States*, 3 F.4th 1061, 1064 (8th Cir. 2021). The Secretary of Homeland Security has delegated her authority under § 1255(m) to United States Citizenship and Immigration Services (USCIS). 8 C.F.R. §§ 2.1, 103.2, 103.3.

USCIS requires all U visa holders seeking permanent resident status under § 1255(m) to undergo a medical examination and submit required medical documentation, known as the Form I-693. Failure to submit the form results in the denial of U-based adjustment. Because § 1255(m) gives the Secretary of Homeland Security the sole authority to adjudicate U visa adjustments, if the application is denied, that denial is not reviewable by an immigration judge (IJ). As the government explains in its answering brief, "[i]f USCIS, after applying its discretion facilitated by [its] regulations, denies a U nonimmigrant adjustment application and the individual is placed in removal proceedings, the immigration judge may not review USCIS's denial or otherwise consider a U nonimmigrant adjustment application." *See also* 8 C.F.R. § 245.24(k) ("USCIS shall have exclusive jurisdiction over adjustment applications filed under section 245(m) [8 U.S.C. § 1255(m)] of the Act."). However, applicants may appeal denials of U-based adjustment of status to USCIS's Administrative Appeals Office. 8 C.F.R. § 245.24(f)(2).

Linda Cabello Garcia (Cabello) is a native and citizen of Mexico who has lived in the United States since 1999, when she was six years old. Cabello was the victim of stalking in 2011, and she reported the incident to the local police department. The police subsequently certified that Cabello was helpful with the criminal investigation. In 2013, Cabello applied for a U visa, and in October 2016, USCIS granted her U visa status for a term of four years.

On August 10, 2020, Cabello timely filed a U-based adjustment of status application under 8 U.S.C. § 1255(m). She submitted evidence that she claims demonstrated her eligibility for U-based adjustment, but she did not submit the required Form I-693 medical information. On August 23,

2021, USCIS sent her a request for evidence, including the Form I-693.  Cabello still did not submit the form.  Cabello requested that USCIS approve her application without the form, citing her severe anxiety and panic attacks related to receiving medical services.  She also claimed that USCIS lacked the authority to request this public health information.

On February 4, 2022, USCIS issued a notice of intent to deny Cabello's application, citing her failure to submit Form I-693.  In response, Cabello submitted partial vaccination records but did not submit Form I-693, again asserting that USCIS lacked the authority to request this information and reiterating her anxieties about "anything medical."  On August 1, 2022, USCIS denied Cabello's adjustment of status application, citing her failure to provide Form I-693.

On December 16, 2022, Cabello filed this lawsuit in the United States District Court for the Western District of Washington on behalf of herself and a putative class, which has not been certified.  Cabello alleged that USCIS wrongfully denied her adjustment of status by requiring her to submit the Form I-693, challenging USCIS's denial of discretionary relief as arbitrary and capricious under the Administrative Procedure Act (APA).  Cabello claimed that USCIS lacked the statutory authority to require medical examinations and health-related information from § 1255(m) applicants.

The district court granted the government's motion to dismiss, concluding that it lacked jurisdiction to review the denial of § 1255(m) adjustment of status under 8 U.S.C. § 1252(a)(2)(B)(i).  Cabello appealed, and we deferred submission of the case pending the eventual decision in *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995 (9th Cir. 2024).  After *Nakka* was decided, we

ordered the parties to submit supplemental briefing and heard oral argument.

## II

## A

The question before us is whether Cabello's claim can be brought in federal district court.  That inquiry turns on 8 U.S.C. § 1252(a)(2)(B)(i), which reads in relevant part:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title . . . .

We begin by pointing out a few features of this provision.  The reference to "1255 of this title" is a reference to the provision governing discretionary adjustment of status to lawful permanent resident, which includes the U visa adjustment provision in § 1255(m).  The reference to "subparagraph (D)" concerns 8 U.S.C. § 1252(a)(2)(D), which preserves "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."  Such a petition for review arises from removal proceedings before an IJ with review by the Board of Immigration Appeals (BIA), and it is eventually brought in a circuit court of appeals, like ours.  *See Nasrallah v. Barr*, 590 U.S. 573, 580 (2020); *I.N.S. v. St. Cyr*, 533 U.S. 289, 313 & n.37 (2001).  The language of § 1252(a)(2)(B)(i)

is broad, with the Supreme Court observing that it covers "any" judgment "'of whatever kind,'" and, through the term "regarding," "not just the 'granting of relief[,]' but also any judgment *relating to* the granting of relief." *Patel v. Garland*, 596 U.S. 328, 338–39 (2022) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)).

Section § 1252(a)(2)(B)(i) is both a jurisdiction-stripping and channeling provision. *See Nakka*, 111 F.4th at 1004–05 (explaining that "the statutory scheme strips district court jurisdiction to review such denials" and "channels review to the circuit courts" through the petition for review process). If a claim falls within § 1252(a)(2)(B)(i), district courts lack jurisdiction to resolve it, and the claim may be advanced only through the petition for review process in 8 U.S.C. § 1252(a)(2)(D). In that sense, § 1252(a)(2)(B)(i) eliminates jurisdiction in the district courts and routes claims into the limited review process provided in § 1252(a)(2)(D).

In her original briefing, submitted before we decided *Nakka*, Cabello argued that § 1252(a)(2)(B)(i) only strips jurisdiction for cases in removal proceedings and does not preclude judicial review of agency actions taken outside of those proceedings. *Nakka* now forecloses this argument. Section 1252(a)(2)(B)(i) strips district courts of jurisdiction to review the denial of relief under § 1255 "*regardless of whether the judgment, decision, or action is made in removal proceedings*." (Emphasis added). *Nakka* confirmed that "because of the 'regardless' clause, § 1252(a)(2)(B)(i) must be interpreted as also encompassing judgments regarding the granting of discretionary relief that are made by USCIS and DHS outside removal proceedings." *Nakka*, 111 F.4th at 1008; *see also id.* at 1014 (explaining that § 1252(a)(2)(B)(i) applies "generally to adjustment of status, whether the applicant is seeking relief from removal or not"). Indeed,

*Nakka* specifically recognized that § 1252(a)(2)(B)(i) applies to someone like Cabello, who "is not in removal proceedings" because she is "lawfully present in the United States pursuant to a valid visa" and is "appl[ying] for adjustment of status under § 1255." *Id.* at 1007.

Thus, under *Nakka*'s construction of the plain language of § 1252(a)(2)(B)(i), it matters not that USCIS denied Cabello's requested relief outside the context of removal proceedings. Section 1252(a)(2)(B)(i) applies all the same. Every other circuit to address the question has likewise held that § 1252(a)(2)(B)(i) precludes district court review of challenges to USCIS adjustment of status determinations made outside the context of removal proceedings. *See Xia v. Bondi*, 137 F.4th 85, 87 (2d Cir. 2025); *Viana Guedes v. Mayorkas*, 123 F.4th 68, 71 (1st Cir. 2024); *Momin v. Jaddou*, 113 F.4th 552, 553 (5th Cir. 2024); *Hatchet v. Andrade*, 106 F.4th 574, 580, 582 (6th Cir. 2024); *Shaiban v. Jaddou*, 97 F.4th 263, 268 (4th Cir. 2024); *Abuzeid v. Mayorkas*, 62 F.4th 578, 583 (D.C. Cir. 2023); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1027–28 (7th Cir. 2023); *see also Doe v. Secretary, U.S. Dep't of Homeland Sec.*, No. 22-11818, 2023 WL 2564856, at *2 (11th Cir. Mar. 20, 2023) (per curiam).

## B

Cabello nonetheless argues that her claim can be brought in federal district court because it is a "collateral challenge" to a USCIS policy, a type of claim that *Nakka* treated as allowable notwithstanding § 1252(a)(2)(B)(i)'s broad delimitation of jurisdiction. We conclude that *Nakka*'s exception for such collateral challenges does not apply to Cabello.

1

In *Nakka*, the plaintiffs were Indian nationals and their children who resided in the United States under nonimmigrant work visas. 111 F.4th at 999. They sought to obtain immigrant visas, which would then allow them to apply for adjustment of status under § 1255. *Id.* The plaintiffs filed a putative class action in federal court challenging USCIS policies used to determine whether their dependent children "aged out" of eligibility for adjustment of status. *Id.*

In assessing whether the plaintiffs' claims could proceed in district court despite § 1252(a)(2)(B)(i), *Nakka* distinguished between two types of claims: (1) review of "individual application denials," and (2) "general collateral challenges to agency policies." *Id.* at 1003. *Nakka* held that "§ 1252(a)(2)(B)(i) strips jurisdiction over the former, but not the latter." *Id.* Although *Nakka* conducted an extensive review of the statute and case law to reach this conclusion, it ultimately determined that when § 1252(a)(2)(B)(i) refers to "any judgment regarding the granting of relief under . . . 1255," this meant "judgments that an agency adjudicator makes when deciding whether to grant or deny an individual application for discretionary relief." *Id.*

However, *Nakka* also concluded that "Congress has clearly indicated that it did not intend § 1252(a)(2)(B)(i) to preclude district court jurisdiction over collateral policy and procedure claims" when not made in connection with a challenge to the denial of individual discretionary relief. *Id.* at 1005. *Nakka* defined such permissible "collateral challenges" as ones that "challenge generally applicable agency policies without referring to or relying on denials of

individual applications for relief." *Id.* at 999. To our knowledge, no other court of appeals has read § 1252(a)(2)(B)(i) to allow an exception for collateral challenges.

After concluding that § 1252(a)(2)(B)(i) did not strip district courts of jurisdiction to hear collateral challenges to generally applicable government policies relating to discretionary immigration relief, *Nakka* then considered whether any of the plaintiffs in the case could move forward with such a challenge. Here, *Nakka* broke the plaintiffs into two different groups. *Nakka* held that neither category of plaintiff could move forward with a collateral challenge in district court, although for different reasons.[1]

The first group of *Nakka* plaintiffs consisted of those who had not yet filed applications for adjustment of status, whom *Nakka* referred to as the "non-filing plaintiffs." *Id.* at 1010. *Nakka* held that these plaintiffs' collateral challenges were not ripe. *Id.* at 1009–10. Here, *Nakka* explained that "[w]here challenged policies only limit access to an immigration benefit that is created by statute 'but not automatically bestowed on eligible aliens,' the promulgation of the challenged policies does not itself confer a ripe claim." *Id.* at 1010 (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 58 (1993) (*CSS*)). Instead, such a plaintiff's "claim would ripen only once he took the affirmative steps that he could take before the [agency] blocked his path by applying the [challenged policies] to him." *Id.* (quoting *CSS*, 509 U.S. at 59). The non-filing *Nakka* plaintiffs, who had not yet

---

[1] Because no plaintiff in *Nakka* could bring a collateral challenge, Judge Forrest would not have addressed whether § 1252(a)(2)(B)(i) permits collateral challenges to agency policies. *Id.* at 1016 (Forrest, J., concurring in part and concurring in the judgment).

applied for adjustment of status, thus did not have ripe claims. *Id.*; *see also id.* at 1017 (Forrest, J., concurring in part and concurring in the judgment) (same).

*Nakka* then considered two possible exceptions to the ripeness requirement for the non-filing plaintiffs. First, "the plaintiffs' collateral claims would be deemed ripe if they demonstrated that the statute's 'limited review scheme would afford them inadequate review' of their claims." *Id.* (quoting *CSS*, 509 U.S. at 60–61) (brackets omitted). This exception did not apply, *Nakka* held, because these plaintiffs could raise their collateral claims as questions of law under 8 U.S.C. § 1152(a)(2)(D), in the course of any future removal proceedings. *Id.* at 1010–11. Second, the non-filing *Nakka* plaintiffs could demonstrate an exception to the ripeness requirement by showing that the agency "would *informally* reject their applications at a 'prefiling' stage, under an agency practice referred to as 'front-desking.'" *Id.* at 1010 (quoting *CSS*, 509 U.S. at 61–62). But this exception did not apply to the non-filing plaintiffs, either. Instead, the record indicated that USCIS only denied applications through formal denials after receiving an application. *Id.* at 1011.

Having rejected the collateral challenges of the non-filing plaintiffs as unripe, *Nakka* then turned to the other category of plaintiff before it, which in fact was just one plaintiff, Pavani Peddada, whom *Nakka* mostly refers to as "P. Peddada." *Id.* at 1012. Unlike the other plaintiffs, P. Peddada had filed an application for adjustment of status, which USCIS denied. *Id.* at 1011–12. For this reason, her claims were ripe. *Id.* at 1012. But *Nakka* held that P. Peddada's challenge could not proceed in district court either, this time because "§ 1252(a)(2)(B)(i) and (D) channel review of her legal and constitutional challenges to that

denial into a petition for review from a final order of removal." *Id.* at 999; *see also id.* at 1018 (Forrest, J., concurring in part and concurring in the judgment) (same). *Nakka* cited the fact that both the denial of discretionary immigration relief at issue and the broader "policy challenge[]," which was bound up with P. Peddada's individual denial, "would be reviewable on a petition for review from a final removal order under § 1252(a)(2)(D)." *Id.* at 1013.

*Nakka* acknowledged P. Peddada's argument that requiring her to raise her claim in removal proceedings could mean that "as a practical matter," her claims will be "completely unreviewable by any court, including circuit courts." *Id.* at 1014. *Nakka* explained that once USCIS denied her application for adjustment of status, it informed her that it would commence removal proceedings unless she left this country within 33 days. *Id.* If P. Peddada exited the United States, she would never have removal proceedings in which to raise her claim. *Id.* Instead, she could "obtain review only if she 'bet the farm' by violating the USCIS's directive to leave when her lawful status expired." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010)).

*Nakka* recognized that this put P. Peddada in a hard place because it required her to "violate the law to render" herself removable, so that she could then obtain judicial review of the denial of adjustment of status. *Id.* But *Nakka* permitted this state of affairs because "Congress can require review in this manner by expressly limiting and channeling judicial review." *Id.* P. Peddada could therefore only raise her claims in removal proceedings, even though this had the effect of "temporarily barr[ing]" her from obtaining judicial review. *Id.* (quoting *CSS*, 509 U.S. at 60).

2

We now turn to whether, under *Nakka*, Cabello can advance a collateral challenge in district court. We hold she cannot.

As *Nakka* explained, a collateral claim is one that "challenge[s] generally applicable agency policies *without referring to or relying on denials of individual applications for relief*." 111 F.4th at 999 (emphasis added). But once a plaintiff has applied for adjustment of status and the agency has denied it—as was the case with both P. Peddada and Cabello—the plaintiff ceases to have the collateral claim that *Nakka* envisioned. *See id.* at 1012 (explaining that when P. Peddada relied on the "denial of her application to satisfy ripeness," "the statutory scheme channel[ed] review of such denials into a limited review process"). At that point, the plaintiff's claim, of necessity, is a challenge to the "type of 'judgment' an adjudicator makes when deciding whether to grant an individual application," *id.* at 1003, which is subject to the jurisdiction-stripping and channeling of § 1252(a)(2)(B)(i). *See also id.* at 1018 (Forrest, J., concurring in part and concurring in the judgment) (explaining that once the challenged USCIS policies were "directly applied to [P. Peddada] in denying her application for adjustment of status," she "can no longer be deemed to assert any truly collateral claims"). That explains why P. Peddada could not be regarded as advancing a collateral challenge, or at least not one that could be disentangled from the denial of individual relief that triggered § 1252(a)(2)(B)(i).

Because USCIS denied Cabello's request for an adjustment of status, she is not bringing a collateral claim under *Nakka*. *See id.* at 1015 (explaining that the *Nakka*

decision is "consistent with" cases from other circuits holding that "district courts lack jurisdiction to hear plaintiffs' challenges to USCIS's denials of their applications for adjustment of status, even though plaintiffs challenged those denials as arbitrary and capricious under the APA" (citing *Abuzeid*, 62 F.4th at 586; *Britkovyy*, 60 F.4th at 1032)).    To this point, Cabello's complaint specifically challenges as arbitrary and capricious USCIS's denial of her request for adjustment of status.  Her claim is therefore analogous to the type of claim brought by P. Peddada in *Nakka*, and 8 U.S.C. § 1252(a)(2)(B)(i) channels her to the petition for review process.  As we said in *Nakka*, "§ 1252(a)(2)(B)(i) strips district courts of jurisdiction to hear a plaintiff's APA claim when that claim challenges an agency's individualized denial of an application for adjustment of status." *Id.*  That is what Cabello challenges here.[2]

---

[2] Under *Nakka*, Cabello potentially could have brought a collateral challenge to the USCIS medical policy in federal district court had she done so earlier, before USCIS denied her adjustment of status under § 1255(m), which is what triggered § 1252(a)(2)(B)(i).  To maintain such a collateral challenge in district court, though, Cabello would have needed to avoid the other problem that beset the remaining *Nakka* plaintiffs, which was that their claims were premature and therefore unripe (and not subject to any ripeness exceptions).  Although it may be difficult for plaintiffs to fit their challenges into the window *Nakka* opened, the narrow availability of the claim is a feature of *Nakka* itself; indeed, none of the plaintiffs in *Nakka* were able to bring the type of collateral challenge that *Nakka* allowed.  We note in this regard that the putative class in this case includes U visa holders subject to the USCIS Form I-693 policies who have not submitted applications for adjustment of status.  But we need not decide whether these persons would have ripe claims because as members of an uncertified class, they are not before us. *See, e.g.*, *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021); *Emps.-Teamsters Loc.*

That USCIS denied Cabello's claim outside of removal proceedings also does not make her claim collateral under *Nakka*. As we explained above, *Nakka* discussed at length how the term "judgment" in § 1252(a)(2)(B)(i)—"*any judgment* regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title" 111 F.4th at 1002 (emphasis added)—includes the denials of discretionary relief outside of removal proceedings. *Nakka* in fact specifically explained that a "judgment" under § 1252(a)(2)(B)(i) included USCIS's denial of adjustment of status under § 1255 as to persons lawfully present in the United States, even though when USCIS renders such a judgment it "necessarily . . . occurs outside 'removal proceedings.'" *Id.* at 1007. *Nakka* further offered that a "judgment" under § 1252(a)(2)(B)(i) would include relief that "can be granted only by USCIS or DHS, not an IJ, outside removal proceedings." *Id.* at 1008. USCIS's denial of § 1255(m) relief to Cabello reflects these types of "judgments," since Cabello "applie[d] for adjustment of status under § 1255" and is in the category of persons for whom "relief can be granted only by USCIS." *Id.* at 1007–08. Cabello is therefore subject to § 1252(a)(2)(B)(i). Treating challenges arising outside the removal context as collateral challenges would be directly contrary to *Nakka*.

Cabello's reliance on the *CSS* exception regarding the efficacy of the limited review scheme is similarly misplaced. That exception, as *Nakka* explained, is pertinent to plaintiffs who had not yet submitted an adjustment of status application—it is an exception to the requirement that plaintiffs obtain a formal agency denial to establish ripeness.

---

*Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 923 (9th Cir. 2007).

*Id.* at 1010.   But Cabello's claim is already ripe, so this exception is irrelevant to her.

Finally, Cabello argues that her claim should be regarded as collateral, and not subject to § 1252(a)(2)(B)(i), because unlike P. Peddada, her denial of adjustment of status is not reviewable upon a petition for review under § 1252(a)(2)(D).   As we noted above, unlike the form of adjustment of status at issue in *Nakka*, *see* 111 F.4th at 1013–14, the parties agree that 8 U.S.C. § 1255(m) vests discretionary decision-making authority in the Secretary of Homeland Security alone, such that an IJ cannot review it. *See* 8 C.F.R. § 245.24(k).   Importantly, and as we discuss in the next section, Cabello will be able to argue in any future removal proceedings before an IJ or later petition for review in a court of appeals that some adjudicator—the IJ, BIA, the court of appeals, or any or all of them—must be able to review her denial of § 1255(m) relief as a matter of due process.   But the key point for present purposes is that the availability of later review under § 1252(a)(2)(D) does not pre-determine whether Cabello's claim is collateral, such that Cabello can avoid § 1252(a)(2)(B)(i) and bring her claim in district court.

*Nakka* was clear that because P. Peddada's claim was ripe due to the agency denial of her application for relief, § 1252(a)(2)(B)(i) "channel[ed] review of such denials into a limited review process."   *Id.* at 1012.   As we have explained, that holding governs Cabello.   Section 1252(a)(2)(B)(i)'s channeling does not turn on whether the plaintiff will have available judicial review in the petition for review process.

Nevertheless, and although it had already determined that § 1252(a)(2)(B)(i)'s reference to "any judgment"

included judgments outside of the removal process (like P. Peddada's and Cabello's), *Nakka* went on to consider in Part III.C of the opinion whether P. Peddada's claim was outside of § 1252(a)(2)(B)(i) because that provision pertains to "any judgment regarding the granting of *relief* under section . . . 1255." 111 F.4th at 1002 (emphasis added). Specifically, P. Peddada maintained that through the term "relief," Congress meant "relief from removal," such that § 1252(a)(2)(B)(i) applied only to persons who were removable and seeking relief from removal, which P. Peddada was not. *Nakka*, 111 F.4th at 1012.

It was in this specific context that *Nakka* addressed P. Peddada's ability to seek relief in the petition for review process under 8 U.S.C. § 1252(a)(2)(D). In this portion of its analysis, *Nakka* began by explaining that the textual and legislative history arguments relating to the term "relief" did not conclusively resolve whether § 1252(a)(2)(D) was limited to situations in which the plaintiff was seeking relief from removal. *Id.* at 1013. *Nakka* then rejected P. Peddada's argument that a presumption of judicial review should favor jurisdiction in district court, because P. Peddada's claim was reviewable in a petition for review under § 1252(a)(2)(D), even though this would require P. Peddada to "bet the farm" by remaining in the United States unlawfully. *Id.* at 1013–14. Returning to the meaning of "relief" in § 1252(a)(2)(B)(i), *Nakka* then concluded that "[a]lthough it is a close question," "'relief under . . . 1255' refers generally to adjustment of status, whether the applicant is seeking relief from removal or not." *Id.* at 1014. Accordingly, the term "relief" did not remove P. Peddada's claim from the ambit of § 1252(a)(2)(B)(i), and that provision in turn channeled her claim into the petition for review process. *See also Abuzeid*, 62 F.4th at 585 (rejecting this same argument

concerning "relief" because it created "an untenable contradiction" with the "regardless" clause).

Properly understood, then, the question of whether Cabello may presently pursue her claim in the § 1252(a)(2)(D) petition for review process (short of a constitutionally required exception to any prohibition on judicial review there) does not resolve whether her claim is collateral under *Nakka*.  Her claim is plainly not collateral.  Under *Nakka*'s analysis, the potential present lack of judicial review under § 1252(a)(2)(D) would instead be relevant to whether any presumption of judicial review would countenance allowing district court review under § 1252(a)(2)(B)(i).  *See Nakka*, 111 F.4th at 1013–14.

We do not think it would here.  In *Nakka*, it was sufficient to overcome the presumption of judicial review that P. Peddada could pursue her claims in a petition for review from an order of removal, even though that process might be entirely unavailable to her as a "practical matter." *Id.* at 1014–15.  But we did not say that the theoretical availability of the § 1252(a)(2)(D) process was necessary for overcoming any presumption of judicial review in district court.  Nor could it be.  A presumption of judicial review only comes into play when the text is ambiguous.  *See Patel*, 596 U.S. at 347 ("Because the statute is clear, we have no reason to resort to the presumption of reviewability."); *see also, e.g.*, *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020).  *Nakka* clearly holds that the statutory phrase "any judgment regarding the granting of relief under section . . . 1255," 8 U.S.C. § 1252(a)(2)(B)(i)—given the terms "any judgment" and "relief"—encompasses claims for "adjustment of status, whether the applicant is seeking relief from removal or not," and regardless of whether the agency decision denying relief is made "outside 'removal

proceedings.'" 111 F.4th at 1007, 1014. The meaning of the statutory text cannot change depending on the plaintiff. Thus, *Nakka*'s treatment of § 1252(a)(2)(B)(i) encompasses Cabello's claims. Indeed, despite the claimed unavailability of review under § 1252(a)(2)(D), *Nakka* specifically noted that § 1252(a)(2)(B)(i) covers "forms of relief [that] can be granted only by USCIS or DHS, not an IJ." *Id.* at 1008.

Accordingly, because "[t]he statutory language demonstrates clear congressional intent to strip [district court] jurisdiction to review claims like this one, [Cabello] cannot rely on the presumption of reviewability to circumvent § 1252(a)(2)(B)(i)'s plain language." *Britkovyy*, 60 F.4th at 1030; *see also Abuzeid*, 62 F.4th at 585 (holding that the presumption of judicial review could not overcome § 1252(a)(2)(B)(i) because "the plain and unequivocal language in § 1252(a)(2)(B)(i) is clear and convincing evidence of Congress's intent to strictly circumscribe the jurisdiction of federal courts over cases involving adjustment of immigration status").

3

For the reasons we have just explained, we conclude that § 1252(a)(2)(B)(i) stripped the district court of jurisdiction over Cabello's claim and channeled that claim to the petition for review process. Any objection to this channeling must then be founded on a constitutional argument for immediate judicial review in district court—an argument that we take up in the next section.

Before we do that, however, we pause to observe that our decision aligns with the closest case on point from another circuit, *Britkovyy v. Mayorkas*, 60 F.4th 1024 (7th Cir. 2023). In *Britkovyy*, the Seventh Circuit likewise concluded that § 1252(a)(2)(B)(i) stripped it of jurisdiction to hear an

APA challenge to the denial of adjustment of status, even though there, as here, an IJ would lack authority to review the denial of adjustment of status in the removal process. *Id.* at 1028. The plaintiff in the case, Britkovyy, was allowed to temporarily enter the United States at the border. *Id.* at 1026. Because he was paroled and not admitted into the United States, he was regarded as an "arriving alien" under the immigration laws. *Id.* After Britkovyy married a U.S. citizen, he sought adjustment of status under 8 U.S.C. § 1255. *Id.* By regulation, USCIS has exclusive jurisdiction over adjustment of status applications by arriving aliens, meaning an IJ could not review the USCIS's denial of this relief. *Id.* (citing 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)).

After USCIS denied Britkovyy's request for adjustment of status, and while his removal proceedings were ongoing before an IJ, Britkovyy filed a lawsuit in federal court alleging that USCIS's denial of adjustment of status was arbitrary and capricious under the APA. *Id.* The Seventh Circuit held that it lacked jurisdiction because "§ 1252(a)(2)(B)(i) operates to eliminate judicial review of the denial of an adjustment-of-status application by USCIS." *Id.* at 1028. And because the statutory text clearly disallowed jurisdiction, the presumption of reviewability did not apply. *Id.* at 1030.

Especially relevant to this case, Britkovyy argued that if a federal court lacked jurisdiction over his application under § 1252(a)(2)(B)(i), the same would be true for adjustment of status applications from U visa holders, over which USCIS likewise has exclusive jurisdiction. *Id.* at 1031. In Britkovyy's view, this would contradict Congress's intent to confer generally favorable treatment on U visa holders. *Id.* But the Seventh Circuit rejected this as a "nonstarter[]" because it was based on policy concerns, which "'cannot

trump the best interpretation of the statutory text.'" *Id.*
(quoting *Patel*, 596 U.S. at 346).  In the Seventh Circuit's
view, "[i]f Congress wishes to provide arriving
aliens . . . and U-Visa holders with judicial review in this
context, it may do so," but it was not the court's "place to
elevate policy considerations above statutory text." *Id.*

The Seventh Circuit recognized that in Britkovyy's case,
the IJ in the parallel removal proceedings had already
determined that the immigration court lacked jurisdiction to
review the USCIS's denial of adjustment of status,
consistent with the governing regulations giving USCIS
exclusive jurisdiction.  *Id.* at 1026, 1032.  Even so, the
Seventh Circuit emphasized that "recognizing that we lack
jurisdiction over this case will not preclude [Britkovyy] from
receiving judicial review of the IJ's decision," because
Britkovyy, in the event of a removal order, could appeal the
IJ's decision to both the BIA and the Seventh Circuit.  *Id.* at
1032.  This is the same point we have made above and
throughout: although § 1252(a)(2)(B)(i) channels Cabello to
the IJ process, she may challenge in the § 1252(a)(2)(D)
petition for review process any prohibition on the review of
USCIS's denial of her § 1255(m) application.

Although *Nakka* seemingly departed from *Britkovyy* in
announcing the availability of collateral challenges
notwithstanding § 1252(a)(2)(B)(i), *Nakka* also stated that
its decision was "consistent with the holding[] . . . of the
Seventh Circuit in *Britkvoyy*."  *Nakka*, 111 F.4th at 1015.
Because Cabello is not bringing a collateral challenge—
under *Nakka*, the plaintiff in *Britkovyy* would not have had
such a challenge either, even had one been available—
*Nakka*'s supportive endorsement of *Britkovyy*'s holding
further confirms our analysis up to this point.

III

Cabello next argues that if § 1252(a)(2)(B)(i) forecloses district court jurisdiction in this case—as we have held it does—it is unconstitutional as applied to U visa adjustment of status applicants because by statute and regulation, they cannot obtain review of the USCIS's denial of § 1255(m) relief in removal proceedings before an IJ.  According to Cabello, it violates Article III and principles of procedural due process to deny her judicial review of her assertedly pure legal challenges to USCIS's medical examination requirements.  This argument is unavailing.

The government claims that Cabello enjoys no constitutional right to judicial review of a discretionary immigration benefit.  That proposition is not without support in the law.  *See SEC v. Jarkesy*, 603 U.S. 109, 152–53 (2024) (Gorsuch, J., concurring); *J.M.O.*, 3 F.4th at 1064.  And more narrowly, there is reason to think that the government has special discretion when it comes to imposing medical requirements for applicants seeking immigration relief.  *See* 8 U.S.C. § 1182(a)(1); 42 U.S.C. § 252; *Demore v. Kim*, 538 U.S. 510, 522 (2003); *Jarkesy*, 603 U.S. at 152–53 (Gorsuch, J., concurring).

But we need not go so far to resolve Cabello's constitutional objection.  As it stands, Cabello faces obstacles to judicial review of her claim wherever she might try to bring it.  In district court, that obstacle is § 1252(a)(2)(B)(i), which, as we discussed above, strips federal courts of jurisdiction and channels Cabello to the petition for review process.  But in that separate removal process before an IJ, and (the parties say) in a further petition for review from an IJ decision, Cabello faces the obstacle that denials of § 1255(m) relief cannot be raised before IJs

during removal proceedings because § 1255(m) determinations are committed exclusively to USCIS. *See* 8 U.S.C. § 1255(m); 8 C.F.R. § 245.24(k).

In either forum, then, Cabello will evidently be required to argue that the Constitution entitles her to judicial review of USCIS's determination, notwithstanding statutory and regulatory prohibitions on IJ and judicial review. And the IJ and petition for review process provide Cabello a forum within which to raise this argument. *See Britkovyy*, 60 F.4th at 1032. In these circumstances, we see no reason why Cabello has a constitutional entitlement to raise her claim to judicial review in district court as opposed to through the IJ and petition for review process. Cabello cites no authority that would support any constitutional prioritization of the district court pathway. If Cabello can ultimately obtain review, the pathway for her to do so is through the petition for review process; § 1252(a)(2)(B)(i) plainly forecloses her ability to bring this challenge directly in district court.

To be sure, this could delay Cabello's ability to challenge USCIS's denial of adjustment of status. And it might put Cabello in a difficult situation if she is under an order to leave the United States by a date certain. If she complies with that order and leaves the country, she would forego the removal proceedings to which § 1252(a)(2)(B)(i) has channeled her. And if she remains here to raise the issue in the removal process, she may violate the law through her continued presence. But one will recall that these were the same "bet the farm" problems that P. Peddada faced when we held in *Nakka* that § 1252(a)(2)(B)(i) required her to pursue her claims through § 1252(a)(2)(D). *See Nakka*, 111 F.4th at 1014. Yet we concluded in *Nakka* that despite this hardship, "Congress can require review in this manner by expressly limiting and channeling judicial review." *Id.* In

the absence of any greater need for immediate judicial review as compared to *Nakka*, that same observation applies here.

*     *     *

For the foregoing reasons, the district court lacked jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(i).

**AFFIRMED.**

---

BRESS, Circuit Judge, with whom LEE, Circuit Judge, joins, concurring:

This was a straightforward case that we should have been able to resolve with minimal analysis. A jurisdiction-stripping statute provides that "no court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section . . . 1255 of this title . . . ." 8 U.S.C. § 1252(a)(2)(B)(i). The plaintiff is seeking review of the denial of adjustment of status under § 1255. She plainly falls within § 1252(a)(2)(B)(i), and so there is no jurisdiction to hear her claim. The statute does create an exception for claims brought under "subparagraph (D)," *id.*, a reference to 8 U.S.C. § 1252(a)(2)(D) and the ability to bring "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." But this is not a petition for review, which begins with removal proceedings in immigration court. So there is no federal court jurisdiction in the present posture, and whether there could be in the context of a petition for review would be a question to resolve when presented with such a petition.

The reason today's majority opinion was required to say so much more than this is our decision in *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995 (9th Cir. 2024), which created a novel and unjustified exception to § 1252(a)(2)(B)(i). *Nakka* limited § 1252(a)(2)(B)(i)'s strip of jurisdiction to the review of "judgments that an agency adjudicator makes when deciding whether to grant or deny an individual application for discretionary relief." *Id.* at 1003. *Nakka* then concluded that § 1252(a)(2)(B)(i) preserved "general collateral challenges to agency policies," which it defined as claims that "challenge generally applicable agency policies without referring to or relying on denials of individual applications for relief." *Id.* at 999, 1003. According to *Nakka*, "Congress has clearly indicated that it did not intend § 1252(a)(2)(B)(i) to preclude district court jurisdiction over collateral policy and procedure claims" when not made in connection with a challenge to the denial of individual discretionary relief. *Id.* at 1005. *Nakka* thus allowed general collateral challenges to policies that, if they were to be applied to a person seeking immigration relief, would mean the applicant is unentitled to that relief. In Cabello's case, for example, she seeks to challenge USCIS medical examination policies that resulted in the denial of her request for § 1255(m) adjustment of status, and which would result in such a denial as to anyone like Cabello who refused to abide by the policies.

The vast majority of today's opinion is spent explaining why Cabello cannot take advantage of the exception for collateral challenges that *Nakka* allowed. Of course, none of the plaintiffs in *Nakka* could take advantage of that exception, either. *Nakka* imprudently created an exception to § 1252(a)(2)(B)(i) when no plaintiff in the case before it could even bring the type of collateral challenge that *Nakka*

carved out. Judge Forrest in her separate concurrence in *Nakka* was right: "there is no cause in this case to address whether § 1252(a)(2)(B)(i) preserves review of collateral challenges." *Id.* at 1016 (Forrest, J., concurring in part and concurring in the judgment); *see also id.* at 1014 ("Where the only claims over which we have constitutional authority are not truly collateral, I would not address whether § 1252(a)(2)(B)(i) strips jurisdiction over general challenges to USCIS's policies and practices."). But because *Nakka* went out of its way to conclude that collateral challenges were permitted notwithstanding § 1252(a)(2)(B)(i), we were forced in this case to reckon with the seed, or one might say the grenade, that *Nakka* planted.

Our opinion today faithfully applies *Nakka* in explaining why Cabello cannot bring a collateral challenge. But in allowing collateral challenges in the face of § 1252(a)(2)(B)(i), *Nakka* erred. The jurisdiction-stripping provision in § 1252(a)(2)(B)(i) states that

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title . . . .

This all-encompassing jurisdiction-stripping language does not permit collateral challenges to agency policies in federal district court concerning discretionary immigration relief like adjustment of status under § 1255. It is hard to imagine

broader statutory language: "*no court* shall have jurisdiction to review *any judgment regarding* the granting of relief under section . . . 1255 of this title."   A challenge to "generally applicable agency policies" relating to § 1255 relief, *Nakka*, 111 F.4th at 999, like the medical examination policies Cabello challenges, is plainly a challenge to an agency "judgment *regarding* the granting of relief" under § 1255.

The Supreme Court's decision in *Patel v. Garland*, 596 U.S. 328 (2022), confirms this.  In *Patel*, the Supreme Court held that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)."  *Id.* at 347.  To reach this conclusion, *Patel* gave § 1252(a)(2)(B)(i) a broad construction that befit its broad statutory text.  *Patel* agreed with the position that the term "judgment" is "broad" and "encompasses any and all decisions relating to the granting or denying of relief." *Id.* at 337.  It emphasized that the term "any" has "an expansive meaning" and "means that the provision applies to judgments 'of whatever kind' under § 1255, not just discretionary judgments or the last-in time judgment." *Id.* at 338 (first quoting *Babb v. Wilkie*, 558 U.S. 399, 405 n.2 (2020), then quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)).  And *Patel* explained that "[s]imilarly, the use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of the provision covers not only its subject but also matters relating to that subject.'" *Id.* at 338–39 (quoting *Lamar, Archer & Cofrin LLP v. Appling*, 584 U.S. 709, 717 (2018)).  Putting these points together, *Patel* held that "§ 1252(a)(2)(B)(i) encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief."  *Id.* at 339.  *Nakka* itself, meanwhile,

correctly explained that "because of the 'regardless' clause, § 1252(a)(2)(B)(i) must be interpreted as also encompassing judgments regarding the granting of discretionary relief that are made by USCIS and DHS outside removal proceedings." 111 F.4th at 1008.

Combining this last point from *Nakka* with *Patel*'s broad interpretation of § 1252(a)(2)(B)(i), how can agency policies underlying § 1255 relief—policies that set the terms for such relief—not be judgments "of whatever kind" "relating to" the granting of § 1255 relief?  As the D.C. Circuit has explained, "*Patel* precludes review of all kinds of agency decisions that result in the denial relief—whether they be discretionary or nondiscretionary, legal or factual." *Abuzeid v. Mayorkas*, 62 F.4th 578, 584 (D.C. Cir. 2023).  General agency policies governing § 1255 relief plainly fit within this.  Those policies are part of "all" the "decisions relating to the granting or denying of relief."  *Patel*, 596 U.S. at 337.  Section 1252(a)(2)(B)(i) thus does not allow the type of collateral challenge that *Nakka* permitted.  *Patel* emphasized that "[f]ederal courts have a very limited role to play" in the government's decisions "denying discretionary relief from removal."  *Id.* at 331.  But *Nakka*, contrarily, envisions district courts seemingly playing an active role in that process for any challenge deemed collateral.

*Nakka* reasoned that *Patel* did not address whether collateral challenges to agency policies were permitted notwithstanding § 1252(a)(2)(B)(i).  111 F.4th at 1003–04.  That is irrelevant because *Patel*'s *analysis* points strongly against the type of challenge *Nakka* allowed.  The reasoning of *Patel* persuasively supports a reading of § 1252(a)(2)(B)(i) that, through broad jurisdiction-stripping language, does not simultaneously allow major district court challenges to agency policies relating to discretionary

immigration relief. *Nakka*'s exception for collateral challenges squeezed water from a stone. In Cabello's case, allowing such a challenge would mean she could attack in district court the very basis for her denial of discretionary relief, or, if she had yet to seek that relief, the very basis on which her request for discretionary immigration relief would be denied. Section 1252(a)(2)(B)(i) should not be read to create a gaping hole in its broad effort to strip district courts of jurisdiction.

*Nakka* offered several reasons to read the text of § 1252(a)(2)(B)(i) to preserve collateral challenges, but those reasons are incorrect. *First*, *Nakka* thought that "the reference to 'the granting of relief under [the enumerated sections]' more likely describes *a single act* of granting or denying an individual application for relief." 111 F.4th at 1004 (emphasis added). But this assertion is directly contrary to *Patel*, which tells us that § 1252(a)(2)(B)(i) "does not restrict itself to certain kinds of decisions" and "encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief." 596 U.S. at 338–39. This includes *all* judgments, not just "the last-in-time judgment." *Id.* at 338. *Nakka*'s attempt to limit § 1252(a)(2)(B)(i) to "a single act," 111 F.4th at 1004—presumably the "last-in-time" determination made by USCIS—flies in the face of the Supreme Court's interpretation of this very provision.

*Second*, and related, *Nakka* reasoned that "Congress's use of the term 'judgment'" is evidence that § 1252(a)(2)(B)(i) "encompass[es] decisions the agency makes when adjudicating an individual application for relief—but not generally applicable policies or procedures." *Nakka*, 111 F.4th at 1006. As to agency policies that set the terms for relief, this again contradicts *Patel*. *Patel* holds that

§ 1252(a)(2)(B)(i) "*does not restrict itself to certain kinds of decisions*." 596 U.S. at 339 (emphasis added). Yet *Nakka* relies on the statutory term "judgment" to say that § 1252(a)(2)(B)(i) is limited to "*a specific type of decision*." 111 F.4th at 1007. The conflict with *Patel* is patent. And the statutory text does not just say "judgment." It says "*any* judgment *regarding* the granting of relief," which, per *Patel*, includes "judgments of whatever kind under § 1255," and "not just 'the granting of relief' but also any judgment *relating to* the granting of relief." 596 U.S. at 338–39.

*Third*, *Nakka* concluded that § 1252(a)(2)(B)(i) was limited to the review of individual applications for relief because of the provision's title, "Denials of discretionary relief." *Nakka*, 111 F.4th at 1004. The Supreme Court has long cautioned that courts should follow "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528–29 (1947). *Nakka* improperly relied on § 1252(a)(2)(B)(i)'s title to contradict both its plain text and the *Patel* decision that interprets it. Section § 1252(a)(2)(B)(i)'s title is thus more properly regarded as "a short-hand reference to the general subject matter," which changes nothing. *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014) (quoting *Trainmen*, 331 U.S. at 528). And the title does not even support *Nakka*'s narrow reading of the provision anyway. An agency policy that provides the basis for the denial of discretionary relief surely falls within the heading "Denials of discretionary relief," especially when "§ 1252(a)(2)(B)(i) encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief." *Patel*, 596 U.S. at 339.

*Fourth*, *Nakka*'s reliance on § 1252(a)(2)(A)(iv)—"[N]o court shall have jurisdiction to review . . . except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title"—misses the mark. *Nakka* said that "[b]ecause Congress explicitly stripped jurisdiction to review agency policy policies and procedures in § 1252(a)(2)(A)(iv) but not in § 1252(a)(2)(B)(i), we presume that Congress did not intend for the latter provision to preclude review of agency policies and procedures." 111 F.4th at 1005–06.

But *Nakka* failed to account for the fact that § 1252(a)(2)(A)(iv) and § 1252(a)(2)(B)(i) operate from different starting points. Section 1252(a)(2)(A)(iv) is explicitly carving out certain agency policies and procedures that are reviewable—those "provided in subsection (e)"—and so it needs to be equally explicit in stating that other procedures and policies are otherwise unreviewable. Section 1252(a)(2)(B)(i), in sharp contrast, is a blanket denial of jurisdiction except for those legal and constitutional questions included in subparagraph (D). Because § 1252(a)(2)(B)(i) is making all judgments regarding the granting of relief under the enumerated sections unreviewable, it does not need to specify that this jurisdiction strip includes challenges to general policies and procedures.

*Finally*, *Nakka*'s reliance on *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), and *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1991) (*CSS*), is misplaced. According to *Nakka*, "[a]lthough § 1252(a)(2)(B)(i) is not identical to the statutes that the Court considered in *McNary* and *CSS*, its text and context are similar in key respects." *Id.* at 1004. That is incorrect. The statutes at issue in *McNary*

and *CSS* were far narrower, providing that "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section."  *McNary*, 498 U.S. at 486 n.6 (quoting 8 U.S.C. § 1160(e)(1)).  However, "[t]here shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation under section 1105a of this title."  8 U.S.C. § 1160(e)(3)(A); *see also CSS*, 509 U.S. at 54–56 (considering analogous statutory language in 8 U.S.C. § 1255a(f)(1) and (4)).

As the Court in *McNary* explained, "[t]he critical words in § 210(e)(1) . . . describe the provision as referring only to review 'of *a determination* respecting *an application*'" for the form of adjustment of status at issue.  498 U.S. at 491–92.  And "[t]he reference to 'a determination' describes a single act rather than a group of decisions or a practice or procedure employed in making decisions."  *Id.* at 492.  The exception for judicial review, which uses the phrase "such a denial," "again refer[s] to a single act, and again mak[es] clear that the earlier reference to 'a determination respecting an application' describes the denial of an individual application."  *Id.*

The phrases "a determination respecting an application," and "any such denial"—the two key phrases relied on by *McNary*—are simply absent from § 1252(a)(2)(B)(i).  The statute at issue here says "any judgment regarding the granting of relief," 8 U.S.C. § 1252(a)(2)(B)(i), which "encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief."  *Patel*, 596 U.S. at 339.  So-called collateral challenges fall under this umbrella when the challenges are to the very policies that the agencies use to determine whether someone is eligible for relief.

*McNary* suggested that one way Congress might foreclose collateral challenges is through language referencing "all causes ... arising under any of the provisions of the legalization program." 498 U.S. at 494 (quotations omitted). Seizing on this, *Nakka* concluded that because "Congress did not follow the *McNary* blueprint when it drafted § 1252(a)(2)(B)(i)," it follows that "Congress has clearly indicated that it did not intend § 1252(a)(2)(B)(i) to preclude district court jurisdiction over collateral policy and procedure claims." 111 F.4th at 1005.

Once again, this is mistaken. *McNary* offered *one way* that Congress might draft statutory text to preclude collateral challenges. It prefaced this suggestion with "for example." *McNary*, 498 U.S. at 494. *McNary* did not require Congress to follow any particular "blueprint" to foreclose collateral challenges. Here, Congress used different jurisdiction-stripping language that accomplishes the same objective. Contrary to *Nakka*, the more valid inference from *McNary* is that if Congress wanted to *limit* the strip of jurisdiction only to the review of individual applications for relief, it would have used the same statutory language from *McNary*.

\*         \*         \*

*Nakka*'s determination that 8 U.S.C. § 1252(a)(2)(B)(i) preserves collateral challenges to agency policies relating to the denial of discretionary immigration relief contravenes the statutory text and Supreme Court precedent. When the moment presents itself, we should overrule this flawed aspect of the *Nakka* decision.